## NATIONAL LABOR RELATIONS BOARD v. SOUTHERN WOOD PRESERVING CO.

### No. 10547.

Circuit Court of Appeals, Fifth Circuit.

April 26, 1943.

Robert B. Watts, General Counsel, National Labor Relations Board, Ernest A. Gross, Associated General Counsel, National Labor Relations Board, both of Washington, D. C., and Dan M. Byrd, Jr., Atty., N.L.R.B., of Atlanta, Ga., for petitioner.

Grover Middlebrooks, of Atlanta, Ga., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The National Labor Relations Board made an order that Southern Wood Preserving Company cease and desist from discouraging membership in United Mine Workers of America by discriminatory discharges and refusal to reinstate employees, and otherwise interfering with its employees in the exercise of their right to self-organization; and to offer Otis Turner reinstatement with back pay, and to post notices that such conduct will not be repeated. The Company not complying, the Board seeks enforcement of the order, while the Company contends there is no substantial evidence to justify the order.

The facts found by the Board are briefly these. In September, 1941, the Company had contracts with its employees through International Union of Operating Engineers, affiliated with American Federa-

tion of Labor, which included closed shop and check off provisions. These contracts were to expire Oct. 11. During September the United Mine Workers of America, affiliated with Congress of Industrial Organizations, undertook to obtain the representation of the employees, and on Sept. 17th telegraphed the Company it had a majority and the next day applied to the Board for certification. On Sept. 29 the Company made a new contract with the Engineers' Union, closing the plant for two or three hours for the employees to vote on the contract, some of the employees being advised by three foremen to attend the meeting if they wanted to keep their jobs. A foreman also referred to the posters of the mine workers as foolishness which would have to stop or something would have to be done about it. On October 2 a petition signed by a majority of the employees was presented to the Company asking that it cease to deduct from their pay dues to the Engineers' Union, since it no longer represented a majority. On Nov. 19th, on the demand of the Engineers' Union, the Company, pursuant to its new contract, discharged nineteen men who had ceased to belong to that Union. An election was held by the Board in December, and the Miners' Union won, and on Jan. 19, 1942, the Company made a contract with that Union and reinstated with back pay the nineteen men it had discharged.

As to Otis Turner, he was a shipping checker, who had worked faithfully and often overtime at his job, and had been commended therefor more than once. In June, 1941, he had made two errors by shipping wrong materials, which had, however, been accepted by consignees without loss to the Company. He had been very active in the September campaign for the Miners' Union, and had circulated the petition of Oct. 2 for cessation of check off dues to the Engineers. On that same date he made another error in shipment, which was caught before the consignment left Atlanta, and cost the Company only $1.00 switching charge to correct. He expressed regret and· offered to pay all expense it caused. On Oct. 4th he was discharged, and reinstatement has since been refused. A week after the discharge Turner was offered another employment on the premises of the Company by one Ashbar, an inspector, but when he went to take the job· he found Ashbar talking to his former superintendent who had discharged him. Ashbar, after leaving the superintendent, told

Turner he had not known earlier that Turner had been messed up in labor trouble, and he could not employ him.

█ The last stated circumstance is objected to as mere hearsay. We do not think so. It is a thing that happened. Turner was refused a promised employment on the ground that he had been messed up in labor trouble, as Ashbar had just learned. Neither Ashbar nor the superintendent testified to any explanation. The circumstance tends to indicate that the superintendent was the source of Ashbar's recent information, and that the superintendent had mentioned it as a thing making Turner an undesirable employee. It has some bearing on the true reason the superintendent had acted on in discharging Turner a few days before.

█ Though the superintendent testified he discharged Turner "solely for general inefficiency in his work" and not for his union activity, it appears that Turner was not generally inefficient, but that just prior to September the superintendent had spoken of him as "a damn good man". The error made Oct. 2 the Board thought was too inconsequential to be the real ground of discharge, and indeed the superintendent did not exactly swear it was. The ground of general inefficiency which he testified to be the sole one was not true, as the Board found, so that it had room to conclude, on all the evidence, that the true ground was his union activity, then at its height. This is not contrary to but in accord with tests we laid down in National Labor Relations Board v. Tex-O-Kan Mills Co., 5 Cir., 122 F.2d 433.

█ We think also that the circumstances, especially the discharge of Turner, and the premature signing of a new contract with the Engineers' Union and the unusual facility afforded of shutting down the plant to vote on it, are sufficient to show a support by the employer of that Union as against its rival, contrary to the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. Financial support is not the only kind of support forbidden.

█ The triumph of the Miners' Union and the signing of a contract with it do not make the matter moot, as is argued. Turner has not been reinstated. There is no certainty that the rivalry between the unions is dead, or that the Company will not again take sides. The Board is the judge of what is necessary to be done to

remedy the unfair labor practices which it has found occurred.

We will decree the enforcement of its order.