## NATIONAL LABOR RELATIONS BOARD v. REVLON PRODUCTS CORPORATION.

### No. 237.

Circuit Court of Appeals, Second Circuit.

July 20, 1944.

Alvin J. Rockwell, General Counsel, and Howard Lichtenstein, Asst. Gen. Counsel, both of Washington, D. C., National Labor Relations Board (Roman Beck, of Washington, D. C., Laurence H. Whitlow, of New Orleans, La., and Winthrop A. Johns, of Washington, D. C., of counsel), for petitioner.

Blumberg & Kleeblatt, of New York City (Samuel Blumberg, Leon Singer, and Abraham Dollinger, all of New York City, of counsel), for respondent Revlon Products Corporation.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.
This is a petition of the National Labor Relations Board to enforce its order directing that the respondent, Revlon Products Corporation, cease and desist from unfair labor practices, post notices, reinstate its employee, George Shapiro, with back pay, and give back pay and certain insurance benefits to the legal representative of Madeline Werner, another employee who died pending the proceeding before the Board and prior to the making of its order.

■ The respondent is a corporation engaged in the manufacture of cosmetics and employing from 150 to 200 workers. The Board found on substantial evidence that when, in August, 1941, Leon Rosenberg, a C. I. O. Union organized for Local 65, entered the lobby of the loft building in which the respondent's plant occupied a floor, Soroko, the service manager of the plant, ordered him out of the place and pushed him from the building. Soroko also telephoned the city police and registered a complaint. A few days later when a group of Grand City employees came to the building to talk to the respondent's workers in order to assist Rosenberg in persuading them to join the union, Soroko apparently sent for the police who promptly arrived. The sergeant told Rosenberg he could not organize on the sidewalk, pushed him and his companions off the street and told him if he saw him there the next day he would lock him up. There was evidence that the visiting union members made no noise and did not threaten respondent's employees, that they were only handing out circulars and that nothing occurred requiring police interference. For some weeks after that time the police daily patrolled the street in front of the building for 1½ hours at lunch time, prevented the employees from forming groups or standing in front of the plant or even on the same side of the street. On August 9, 1941, Soroko told one of the employees that the police would remain there "as long as there is a union button in the plant". Soroko asked the employee why he had joined the union "which was a union of communists and guerillas." The respondent changed the lunch hour of the female employees from 12 noon to 1 P. M. upon the orders of Osborne, the production superintendent. This was to prevent the men, most of whom had then joined the union, from urging the girls to become members, very few of whom had at that time joined. There also was evidence that Soroko sent for one of the employees named Shapiro, characterized Local 65 as a "communistic outfit", and asked him why he had joined. Most the testimony on which the above findings of fact were based was contradicted by other testimony offered by the respondent, but there was substantial evidence and there were reasonable inferences to support the facts as found. The Board concluded that the respondent interfered with, restrained and coerced its employees in the exercise of the rights guaranteed them in Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157. This conclusion depended on a resolution of conflicting evidence and we can see no justification for a reversal of the findings on which it was based.

*The Discharges of Werner and Shapiro:*

■ Madeline Werner solicited many of the employees to join the union and was said to have "signed up" 52 out of 90 employees. She was secretary of the unit and distributed union literature. She was discharged on August 4, 1941, ostensibly for kicking a man named Rodriguez who had seized her ankle while she was at work. He did not deny that he had tried the same antics with her before or claim that he was injured by her. She had been a worker in the plant for three years and there was evidence that her production record was higher than that of any other employee doing similar work. The Board found that she was discharged for union activities and not for kicking Rodriguez and that by her discharge the respondent had discouraged membership in a labor organization by discriminating against her in regard to the hire and tenure of her employment.

■ Shapiro had worked for the respondent for four years. He had held a relatively important position in the plant for a considerable length of time. He, however, was among the first four employees to join the union and asked 15 to 20 other employees to become members. After his union activity became known he was censured by the respondent and demoted from the position which he had held and assigned to other work for which he seems to have been less adapted and which he disliked. He was at last discharged on October 31, 1941, for inefficiency and poor

90

work. The complaints of his conduct were met by evidence adduced on his behalf, and it could be reasonably inferred that the criticisms of his work were about trifling matters and that the charges against him were trumped up. We cannot say that the conclusion of the Board that his discharge was for union activity, rather than for the reasons actually given, was not based on substantial evidence. It found that by demoting Shapiro and by discharging him, the respondent had discouraged membership in a labor organization through discrimination in regard to hire and tenure of employment. In his case, as in that of Werner, there clearly were, upon the findings, unfair labor practices on the part of the respondent under Section 8(1) and (3) of the Act, 29 U.S.C.A. § 158(1, 3).

■ Upon the facts stated, there is legal justification for the "cease and desist" provisions of the Board's order authorized by Section 10(c) of the Act, 29 U.S.C.A. § 160(c).

■ The mandatory provisions of the order respecting Madeline Werner are questioned on the ground that since she died while the proceeding was pending, she cannot be reinstated and back pay cannot be awarded. But it is contended that in any event her representative should not be awarded insurance benefits seeing that they were never a legal obligation to her and at most no more than a voluntary benefaction rather than wages. The contention that back pay necessarily must accompany reinstatement clearly has no basis. Section 10 (c) empowers the Board "to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this chapter." It does not limit the measures to restore the loss which an employee has suffered through an unfair labor practice to cases where reinstatement is desirable or practicable but affords the broadest relief. That such is its effect is evident from the opinion of the Supreme Court in Phelps Dodge Corp. v. Labor Board, 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217. See also N. L. R. B. v. Remington Rand Inc., 2 Cir., 94 F.2d 862, 872, certiorari denied 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540. The provision awarding Werner's personal representative the amount of any "insurance or other death benefits which would have been payable * * * upon. Werner's decease had she

not been discharged" was proper. If her estate would have received insurance benefits had she not been discharged, such a provision was required in order "to restore the status quo as nearly as possible." N. L. R. B. v. Remington Rand Inc., 2 Cir., 94 F.2d 862, 872.

■ It appears from the record that Shapiro entered the army before the order for his reinstatement and back pay was made by the Board. He clearly is entitled to an offer of reinstatement to become practically effective upon his retiring from the army, but his back pay will run only from the date of his discharge to the date of his induction in the army. The order of the Board respecting his back pay is interpreted by us as only involving wages he would have normally earned as an employee of the respondent but for his unlawful discharge and, therefore, does not within its terms include the period in which he may have been in the army.

■ It is finally argued that on November 9, 1942, the respondent entered into a collective agreement with the union as bargaining agent, and that the union is anxious to have the proceeding discontinued. It is said that under such circumstances, notices ought not to be posted, and the proceeding against the respondent should be abandoned, but Section 10(a) of the Act provides that the Board is empowered "to prevent any person from engaging in any unfair labor practice (listed in section 158) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise." Here the Board refused to approve the proposal of settlement which the respondent prevailed upon the union to endorse. We think that under Section 10(a), and the authorities, it is for the Board to say whether it will sanction the new contract and abandon the proceeding it has initiated. N. L. R. B. v. Southern Wood Preserving Co., 5 Cir., 135 F.2d 606, 607, 608; N. L. R. B. v. General Motors Corp., 7 Cir., 116 F.2d 306, 312. It has declined to do so and insisted on taking the ordinary steps where it has discovered unfair labor practices. We hold that the disposition it has made of the matter was within its powers and accordingly grant enforcement of the order as prayed for.