## NATIONAL LABOR RELATIONS BOARD v. GLENN L. MARTIN–NEBRASKA CO.

### No. 12620.

Circuit Court of Appeals, Eighth Circuit.

April 5, 1944.

Colonel C. Sawyer, Principal Atty., National Labor Relations Board of Washington, D. C. (Robert B. Watts, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, William J. Isaacson, all of Washington, D. C., Richard A. Perkins, of Los Angeles, Cal., and Eleanor Schwartzbach, Attys., National Labor Relations Board, of Washington, D. C., on the brief), for petitioner.

W. C. Fraser, of Omaha, Neb. (E. J. Creswell, of Washington, D. C., and C. C. Tucker, of Cleveland, Ohio, on the brief), for respondent.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This case comes before the court upon petition of the National Labor Relations Board for the enforcement of its order against the respondent, the Glenn L. Martin-Nebraska Company, a Delaware corporation. The respondent is engaged in operating an airplane assembly plant at Fort Crook in Sarpy County, Nebraska, where it employs in excess of 5,000 persons.

The order is in the usual form and directs the respondent to cease and desist from certain unfair labor practices affecting commerce and to offer reinstatement and back pay to two discharged employees, George V. Ojeski and William J. Krahling.

The Board found (1) that in violation of § 8(1) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., the respondent interfered with, restrained, and coerced its employees in the exercise of their rights to self-organization, to form, join and assist labor organizations, and to engage in concerted activities for the purpose of collective bargaining, and (2) that in violation of § 8(3) it discriminatorily discharged Ojeski and Krahling because of their membership and activities in a labor union.

The respondent in its answer prays that the petition be dismissed and enforcement denied, contending (1) that there is a total absence of evidence to justify the findings of fact and the order based thereon; (2) that statements of its foremen to the employees derogatory of the union and in opposition to membership of the employees therein were either privileged or made in the performance of their duties in respect of the enforcement of company rules; and (3) that the Board erred in failing to find that Ojeski and Krahling were discharged solely because of incompetency.

■ In view of the clearly defined boundaries of this court's power and duty under the Act, a detailed recital of the evidence is not necessary. Section 10(e) provides that upon petition of the Board to the court for enforcement of its orders, "The findings of the Board as to the facts, if supported by evidence, shall be conclusive." By this statute Congress gave to the Board, not the courts, power to draw inferences from the facts and to appraise conflicting and circumstantial evidence, and the weight and credibility of testimony.

National Labor Relations Board v. Link-Belt Company, 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Nevada Consolidated Copper Corporation, 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; National Labor Relations Board v. Central Steel Tube Co., 8 Cir., 139 F.2d 489; Onan et al. v. National Labor Relations Board, 8 Cir., 139 F.2d 728.

■ The first contention that there is a total absence of evidence to support the findings of the Board is without merit.

The second contention of the respondent relates to the finding of coercion. The evidence in brief in regard to this matter is that in the spring and summer of 1942 the A. F. of L. and the C. I. O. were carrying on a campaign for membership among respondent's employees. They were distributing leaflets to the employees as they left the plant and by various means of approach were soliciting and urging them to join the unions. While the organizational campaign was in progress the respondent about June 1, 1942, distributed among its employees an individual and unilateral Employment Agreement and a booklet entitled Information for Employees. The preamble of the Agreement recited that the Company recognized the right of its employees to bargain collectively, to self-organization, and to join or to refrain from joining any organization or union. It covered wages, overtime, sick leave, vacations, grievances, seniority rights, and other relations. It provided that "This instrument shall be considered a contract between the Company and its employees and shall be effective as of the date hereof. It is the purpose of the Company to continue the agreement in effect until such time as general economic conditions, or other conditions beyond the control of the Company make changes necessary." This instrument was signed by the respondent June 1, 1942, but it was not signed by or on behalf of the employees, and they were not requested to sign it.

The booklet entitled Information for Employees contained rules respecting the "Company's requirements of its employees in their relations with the Company." Rule 36 only is pertinent. It stated that "The * * * solicitation of employees for membership in organizations * * * is not permitted at any time on Company property without the specific approval of the Management."

Thereafter certain of respondent's foremen in speeches at instructional meetings and in conversations with employees expressed their personal disapproval of unions, stating that what they said was their own individual opinions. The evidence, however, shows that sometimes the statements of the foremen contained threats. On one occasion a foreman after stating to a union member that he was against unionism added: "I've heard quite a bit about your talking Union around here. That's got to come to a stop. * * * I'm telling you this here, once and for all, there has been too much of this talk around here * * * you keep your nose clean, or out you go."

Another foreman in warning an employee against talking unionism on the premises said that he had nothing against the union himself; that he believed a union was not needed; that the working conditions of the plant were good; that the Company would pay "as good wages, or maybe more, than the union"; that the employee "would just better forget about it"; and the employee testified that "He wanted to know how I got hooked up with such an outfit as this here." "Of course", he said, "that's all my ideas."

At an instructional meeting a foreman said: "I want you fellows to realize there is some Union talk going on around here and if it is not stopped somebody is going to lose their job."

Some of the employees had talked about unionism during working hours, but most of such conversations referred to in the evidence occurred in the cafeteria or before working hours in a space marked off for rest, waiting and smoking.

That the statements of the foremen in translating the respondent's policy and the meaning of its Rule 36 to the employees are imputable to the Company is too clear for argument. International Ass'n of Machinists v. National Labor Relations Board, 311 U.S. 72, 80, 61 S.Ct. 83, 85 L.Ed. 50; Gamble-Robinson Co. v. National Labor Relations Board, 8 Cir., 129 F.2d 588, 590. The test of corporate responsibility for the acts of its officers and agents is whether the agent in doing the thing complained of was engaged in employing the corporate powers actually authorized for the benefit of the corporation while acting within the scope of his employment. Washington Gas Light Co. v. Lansden, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543; Egan v. United States, 8 Cir., 137 F.2d 369, 379.

The respondent argues that in any event criticism and disparagement of a union and of outside representation are within the right of free speech and can not be the basis of a finding of violation of the Act. But the right of "free speech" can not be invoked as a shield for coercion in violation of the Act. This has been too often decided to require further discussion. National Labor Relations Board v. Federbush Co., 2 Cir., 121 F.2d 954, 956, 957; National Labor Relations Board v. American Tube Bending Co., 2 Cir., 134 F.2d 993, 994, 146 A.L.R. 1017; National Labor Relations Board v. Schaefer-Hitchcock Co., 9 Cir., 131 F.2d 1004, 1008; National Labor Relations Board v. Pick Mfg. Co., 7 Cir., 135 F.2d 329, 331; National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 116 F.2d 753, 756; Gitlow v. New York, 268 U.S. 652, 666, 667, 45 S.Ct. 625, 69 L.Ed. 1138.

The prohibitions of Rule 36 are not limited to activities which interfere with plant efficiency, that is, to working hours or to places were work is being performed. The Board may find that the application of a rule which thus unnecessarily interferes with and hampers the employees in their right of self-organization for collective bargaining, when coupled with its arbitrary enforcement, amounts to intimidation and coercion and constitutes an unfair labor practice. National Labor Relations Board v. William Davies Co., 7 Cir., 135 F.2d 179, 181.

The Board in the present case based its finding of coercion and restraint not alone upon "the anti-union threats and statements which accompanied the purported enforcement of the rule", but also upon "respondent's opposition to the organization activities of its employees * * * and the circumstances disclosed by the entire record." Since the inferences drawn from the whole record are possible, this court "may not consider the findings of the Board." National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 477, 62 S.Ct. 344, 348, 86 L.Ed. 348. Its finding of coercion is conclusive.

Finally, respondent insists that the Board erred in refusing to find that Ojeski and Krahling were discharged for incompetency. Both men were discharged in the

forenoon of June 10, 1942. Their superiors testified that they were discharged solely because of their incompetence. Ojeski commenced work on March 25, 1942, and Krahling on January 22, 1942. Krahling's wages were raised from 75 cents to 80 cents an hour about the middle of March and Ojeski was given a similar increase on May 30th. Ojeski was an active member of the union. The testimony, evidently believed by the Board, was in substance that before work began on the morning of June 10th, Ojeski sat down by Krahling in the smoking space and asked him to join the union. Krahling signed an application. Two hours later Krahling's foreman said to him, "Bill, I understand you signed with the Union." Krahling admitted that he had done so, and he was immediately sent to the general foreman and discharged. About the same time the general foreman's clerk said to Ojeski, "You've gone far enough with your activities", and discharged him. Upon the evidence as a whole the Board could conclude that the real ground for the discharge of the two men was their union activity and not their general inefficiency, which the foreman testified was the sole ground. National Labor Relations Board v. Nevada Consolidated Copper Corp. supra; National Labor Relations Board v. Southern Wood Preserving Co., 5 Cir., 135 F.2d 606, 607.

Since upon an examination of the whole record we can not say that the findings of the Board are without support in the evidence, a decree for the enforcement of the order will be entered.