## NATIONAL LABOR RELATIONS BOARD v. AMERICAN PEARL BUTTON CO.

No. 12972.

Circuit Court of Appeals, Eighth Circuit.

May 8, 1945.

Rehearing Denied June 4, 1945.

Stephen M. Reynolds, Atty., National Labor Relations Board, of Minneapolis, Minn. (Alvin J. Rockwell, General Counsel, National Labor Relations Board, Malcolm F. Halliday, Associate Gen. Counsel, National Labor Relations Board, and Winthrop A. Johns, and Irene Shriber, Attys. National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Roscoe P. Thoma, of Fairfield, Iowa, for respondent.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order issued against respondent, American Pearl Button Company. Respondent resists enforcement, challenging its validity.

Respondent operates a pearl button factory in Washington, Iowa. The Board found that respondent had violated Section 8(1), (3) and (4) of the National Labor Relations Act, 29 U.S.C.A. §§ 158(1, 3, 4), in that it discriminated against certain named employees because of their membership in a union and because they had given testimony against it in a proceeding under the Act. The Board also found that respondent had violated Section 8(1) of the Act by Promulgating rules which unlawfully prohibited union activities on company premises during the employees' own time. Respondent was ordered to cease and desist from these unfair practices; to reimburse the named employees who had been discriminated against for loss of wages; to rescind the rules so far as they prohibited union activities on company property during the employees' own time, and to post appropriate notices. We shall first consider that part of the order which refers to the rules promulgated by respondent.

On August 22, 1940, nearly three years prior to any union activity among its employees, respondent promulgated and posted in each department of its plant on the regular bulletin boards, certain rules of conduct, among which were the following:

"No petitions shall be passed on either company time or property. * * * Participation in organization activities of any kind on company time and property are strictly prohibited."

These remained posted and unchanged until October 22, 1943, when they were replaced by another poster which contained exactly the same rules with one addition not here material. On the same date respondent passed out to its employees a pamphlet edition of the same rules. The

complaint charges that on or about October 23, 1943, respondent distributed the pamphlet to its employees. The trial examiner found "that the respondent, by publishing and distributing the above rules to its employees, interfered with, restrained and coerced its employees in the exercise of the rights guaranteed them in Section 7 of the Act, 29 U.S.C.A. § 157, in that these rules prohibited, on company property, concerted or union activities of employees on their free time, as distinguished from working time. Further, the evidence in the instant proceeding shows that the posting and distribution of these rules on October 22, 1943, only 18 days after the Board had rendered its decision and order in case No. C-2668 (a separate proceeding) were directed against organizational efforts of employees in behalf of the union and the undersigned so finds." The Board adopted the findings of the trial examiner on this issue as well as his findings as to the discriminatory delay in recalling employees Rabenold, Vinton and Shaw to work after their discharge.

In the cease and desist order entered by the Board respondent is required to "rescind immediately its rules prohibiting circulation of petitions and participation in organizational activities insofar as such rules prohibit union activity, including solicitation, on company property *during the employees' own time*." (Italics supplied.) We have heretofore held that such a rule "when coupled with its arbitrary enforcement" amounts to intimidation and coercion and hence may constitute an unfair labor practice. Carter Carburetor Corporation v. National Labor Relations Board, 8 Cir., 140 F.2d 714; National Labor Relations Board v. Glenn L. Martin-Nebraska Co., 8 Cir., 141 F.2d 371. The order of the Board has the effect of modifying the rule so that it will not prohibit union activities on company premises during the employees' own time. At such times the employees are not trespassers but are rightfully on company premises and their time is their own. There is no showing of special circumstances rendering it necessary to enforce such a rule either for the effective operation of the business or for discipline. In Republic Aviation Corporation v. N.L.R.B., 142 F.2d 193, the Second Circuit sustained the power of the Board to forbid an employer to enforce a rule generally forbidding solicitation of any kind in his plant, to apply it to prevent electioneering for a union during the lunch hour of the employees. This decision has now been affirmed by the Supreme Court (Republic Aviation Corp. v. N.L.R.B. 65 S.Ct. 982), and we think is controlling in the instant case.

On June 16, 1943, case C-2668 against respondent and the Washington, Iowa, Chamber of Commerce came on for hearing and sixteen of respondent's employees, including Rabenold, Vinton and Shaw, appeared as witnesses for the Board. On July 15, 1943, four servicing mechanics employed in the automatic and carving department of respondent quit without previous notice of their intention so to do. This caused an emergency layoff of all the operators in that department, including Rabenold, Vinton and Shaw. Without servicing mechanics the machines could not be operated. No one save foreman Bey was available to service these machines, and hence, limited operations only were possible in that department. Respondent contends that in this emergency it was decided to ascertain from the inventory and orders on file just what buttons were most urgently needed to fill orders on file and to recall to work for the number of machines that foreman Bey could service those operators producing the most needed buttons at the time of the layoff, and only to the same machines they had been operating at the time of the layoff and to continue production of the same buttons, also giving consideration to the need and efficiency of the operators, and if possible to find work in other departments for others most needing employment, and to recall all operators to employment as soon as possible. A review of inventories on hand and orders on file was made and a list of the buttons most needed to take care of orders on file was prepared. On July 20, 1943, Bey recalled fifteen operators to the same machines they had been operating in the automatic and carving department at the time of the layoff and put them to making exactly the same buttons they had been making when the layoff occurred, being the buttons of the type and kind ascertained to be most needed to meet and supply the orders on file. At that time four other operators who had been laid off were given work in other departments. On September 15, 1943, one of the servicing mechanics returned to work and seven additional machine operators were recalled. They were put to work on the same machines they had been operating before the layoff, making the same type of button. Rabenold and Shaw were in this

group. At her own request Rabenold did not, however, return to work until September 20. Vinton was recalled October 20. The machine operators who had necessarily been laid off on July 15 were from time to time recalled to their own machines for production of buttons, until they were all put back to work or were placed in other departments, or declined reemployment, before the complaint in this proceeding was filed.

The trial examiner in his findings in effect found that for many years it had been the policy of respondent in laying off or recalling employees to consider (a) how badly the employee needs the work; (b) merits; (c) length of service with the company. But in addition to this it appears that in recalling these employees there was taken into consideration what buttons were needed most and as many operators were recalled as could be used on the processing of the buttons most needed. The examiner found that many of the employees recalled after the layoff had had less length of service than Rabenold, Vinton and Shaw; that a number of employees were recalled on July 20 whose production records were not as good as those of these employees and that these employees had as much or more need for the work than a number of those recalled on July 20, including those transferred to departments other than the automatic and carving department. He concluded that respondent discriminated against these employees in not calling them to work on July 20, 1943, because of their membership in and activities on behalf of the union, and for the further reason that they testified as witnesses for the Board against respondent in case No. C–2668.

The Act does not purport to affect the normal right of the employer to select or discharge his employees. He has a right to exercise his judgment as to what employees should best be retained or recalled. Whether or not the employer in the exercise of his managerial judgment is just or unjust, wise or unwise, is not a matter of concern, and the Board's inquiry must be confined to the question as to whether or not the employees have been discriminated against because of their union activities or affiliations. Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217; American Smelting & Refining Co. v. National Labor Relations Board, 8 Cir., 126 F.2d 680; National Labor Relations Board v. Aluminum Goods Mfg. Co., 7 Cir., 125 F.2d 353; National Labor Relations Board v. William Davies Co., 7 Cir., 135 F.2d 179. So far as the laid-off employees were recalled to the department in which they were employed prior to the emergency layoff is concerned, it is doubtful whether there is substantial evidence of discrimination. The examiner disregarded the undisputed testimony to the effect that in recalling the employees consideration was given to the production of buttons most needed. We shall not go into the detailed consideration of the testimony on this question because of our conclusion as to the failure of respondent to reemploy these employees in some other department. There was received in evidence a table giving the record of Rabenold, Vinton, Shaw and six employees who were rehired on July 20 and put to work in another department. These six are put first in the following list with their record; then follows Rabenold, Vinton and Shaw:

| Name | When started with company | Home conditions |
|---|---|---|
| Alta Boileau | 5–13–45 | Nothing shown |
| Alice Maxwell | 8–15–35 | Married. Husband not able to work |
| Lizzie Knepp | 2–18–42 | Married. Husband works |
| Adeline Johnson | 2–14–35 | Widow. 1 girl at home |
| Laura Harland | 12–6–42 | Married. Husband works. Have children |
| Rachel Wiley | 4–8–41 | Married. Husband in service. No children |
| Carrie Rabenold | 10–15–34 | Married. Husband works |
| Beulah Vinton | 3–9–37 | Married. 2 or 3 children Husband works, cutting |
| Harriet Shaw | 3–9–31 | Married. 2 dependents. Husband cuts buttons |

We are of the view that the Board could, under the evidence, have properly found that the cases of Rabenold, Vinton and Shaw were more meritorious than those of Boileau, Wiley and Knepp, and the failure to give them employment in other departments under the plan of reemployment as claimed by respondent following the layoff, was substantial evidence of discrimination. With this must be considered the fact that Arlene Weinard, who testified as a witness on behalf of respondent at the first hearing, was given employment on July 20. She was single and had only been in the employ of respondent since July 20, 1942, while Rabenold, Vinton and Shaw had been in the employ for a much longer time.

The order of the Board will therefore be enforced and decree will be entered accordingly.