## SAX v. NATIONAL LABOR RELATIONS BOARD.

No. 9560.

United States Court of Appeals
Seventh Circuit.

Dec. 15, 1948.

Jack B. Schiff, of St. Louis, Mo., and Alexander Blumenthal, of New York City, for petitioner.

A. Norman Somers, Asst. Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, David P. Findling, Asst. Gen. Counsel, and Harvey B. Diamond, Atty. N. L. R. B., all of Washington, D. C., for respondent.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner seeks the review of an order made by the respondent, hereinafter referred to as the Board, finding that the petitioner had violated Sections 8(1) and 8(3) of the National Labor Relations Act[1] and ordering the petitioner to cease and desist from discouraging membership in Casket Workers Local Union No. 187 by discriminating in regard to the hiring of applicants for employment, and from interrogating his employees concerning their union membership and organizational activities. The petitioner was affirmatively ordered to offer thirty-five persons named immediate and full employment at the same or substantially equivalent positions at which they would have been employed but for the petitioner's alleged discrimination against them, without prejudice to their seniority and other rights, and to make whole those thirty-five employees for any loss of pay they may have suffered by reason of the discrimination.

The complaint against the petitioner grew out of this situation. On March 7, 1946, Ann Killam, a forelady in one of the petitioner's departments, was discharged. During the noon hour of that day, she had been active outside the plant in soliciting membership in the union, and immediately after lunch she was summoned to the office and discharged. Seventeen of her fellow workers struck that day because they thought Killam had been discharged because of her union organizational activities. The next day twenty-one more employees joined the strike. Three of them were taken back, two on their own application on March 8 or 9, and the other one was called back at some date not apparent in the record.

On the afternoon of March 7, a union organizer, James R. Barr, requested the petitioner conditionally to give the striking employees their jobs back. On the next day, he was informed by the petitioner's attorney that the petitioner considered that the employees had quit and and their jobs had been filled, but that the petitioner would later "if they could take on more people * * * have no objection to putting them back to work."

The Board found that the union organizer's request for reinstatement of the striking employees on March 7 and 8 "did not constitute such an unconditional offer by the strikers to return to their jobs as to raise an inference of discrimination from the (petitioner's) failure to reinstate those who had not yet been replaced." The Board further found "that all the strikers made an unconditional request for reinstatement on March 12, at which time all their jobs had been filled by replacements." The Board also found "that the strikers made daily appearances at the (petitioner's) plant for more than 3 weeks after the beginning of the strike, in an *effort to solicit the non-striking employees for membership in the Union* and that they continued such daily appearances for several weeks after the (petitioner) rejected their March 12 request for reinstatement, allegedly for lack of vacancies." (Italics ours.)

The Board further found: "That the (petitioner) knew on the days following March 12, that the strikers still desired employment. The strikers could reasonably have concluded from the statement of the (petitioner's) attorney that additional applications were unnecessary. * * * and that *the unconditional application by all the strikers on March 12 was in the nature of a continuing application which remained in effect and was still current and operative when subsequent vacancies occurred and hirings were made. * * * Accordingly,* we find that, by failing to rehire the strikers because they engaged in concerted activities protected in Section 7 of the Act, the (petitioner) interfered with, restrained, and coerced his employees in violation of Section 8(1) of the Act. We also find that the (petitioner's) conduct, in discriminating in regard to the hire and tenure of the strikers, discouraged membership in the Union and thus also violated Section 8(3) of the Act."

The Board also found that Ann Killam was properly discharged for cause and that the resulting strike was an economic strike, free from any unfair labor practice of the petitioner.

---

[1] 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

It will thus be seen from the Board's findings that the strike occurred not because of any unfair labor practice of the petitioner. The employees went on strike under the belief that Ann Killam had been wrongfully discharged. In this they were mistaken, and they cannot visit their mistake upon their employer. The petitioner, as was his right, filled all the vacancies created by the strikers quitting; and at the time the strikers unconditionally applied on March 12 for reinstatement, there were no vacancies. The strikers had lost their status as employees of the petitioner, and the petitioner had a right to fill their vacancies. National Labor Relations Board v. Mackay Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381. Thereafter the strikers stood at the gate of the petitioner on the same footing as anyone else seeking employment, with this exception. The petitioner could not refuse to hire them or could not discriminate against them because of their having engaged in the concerted activity of the strike. National Labor Relations Board v. Waumbec Mills, 1 Cir., 114 F.2d 226. The Board found that the strikers were so discriminated against and inferred such discrimination from its finding that the mass application of March 12 was a continuing application and that subsequent to March 12, the petitioner from time to time, up to July 16, 1946, employed seventy-seven persons without employing a single one of the strikers.

There is no evidence to support the Board's finding that after March 12 the strikers "desired employment," except the presence of the strikers outside of the gate for three weeks after the beginning of the strike. The Board found they were there "in an effort to solicit the non-striking employees for membership in the Union." There is no finding that they were there seeking work or that the petitioner knew they were seeking work or that a single one of the strikers had after March 12 applied for work. No evidence is found to support the Board's finding that "The strikers could reasonably have concluded from the statement of the (petitioner's) attorney that additional applications were unnecessary" for the very simple reason that there is no finding that this statement of the attorney made to the union organizer was ever communicated to the strikers. Certainly the strikers could not have relied upon a statement never shown to have been communicated to them.

It is conceded that not one striker ever requested employment after March 12. The Board found that it was not necessary for the strikers to make application again because the application of March 12 was a continuing one. The effect of this finding is that, whenever a vacancy occurred, the petitioner was obligated to look up the strikers and first offer them employment. This, notwithstanding the fact that all of the strikers were not there all of the time, and some of them were there only around starting time in the morning and quitting time in the evening. We find no provision of the statute which required the petitioner to place the strikers on a preferred list. If any of the strikers had applied to the petitioner for a job after March 12 and had been turned down, and this occurred often enough to indicate a pattern of conduct by the petitioner, the Board might properly have inferred discrimination. But to say that one mass application for employment at a time when all the jobs were filled was a continuing application so as to relieve the employees of making further applications or of informing the petitioner that they desired work, is to relieve the strikers of their duty to apply when a job was available, and to shift the burden to the employer of seeking out one of the strikers to fill the job or be guilty of discrimination. No inference of discrimination can be drawn from the failure to employ the strikers when there was no vacancy at the time they applied. This is conceded. There had to be an application at the time of a vacancy before there could possibly be discrimination. The Board's ruling would dispense with application at the time of a vacancy by the fiction of continuing application. An application when there was no vacancy cannot be used to do duty when a vacancy does occur, in the absence of a clear understanding by the employer that the application was to be considered a continuing one. The record here indicates that the petitioner had no such understanding.

The petitioner had a right to believe, as the Board found, that the presence of the strikers at his gate was "in an effort to solicit the non-striking employees for membership in the Union" for it must be remembered that a petition for certification of a bargaining representative had been filed on March 18, and an election was ordered July 26, 1946, to be held August 22, 1946. The strikers were building up their economic strength, as they had a right to do. While they were engaged, as the Board found, in that endeavor, it would be unfair and unreasonable to infer that they were also making application for jobs without in any manner informing the petitioner that they were seeking jobs. If there had been any showing that the strikers had been informed by the union organizer that the petitioner had no objection to rehiring them, and that they understood that the mass application of March 12, when there were no vacancies, was to be a continuing one, and the petitioner so understood it, or a showing that the strikers had applied when vacancies occurred and had been refused so consistently as to indicate a pattern or a course of conduct by the petitioner, an inference of discrimination might arise. The Board's inference or construction of a continuing application is raised up without a finding of knowledge or intent of either the petitioner or the strikers that they understood the mass application, at a time when no vacancies existed, as a continuing application to be considered whenever a vacancy occurred. The inference of discrimination under these circumstances is unreasonable and cannot be sustained. The conclusion that Section 8(3) had been violated is erroneous.

■ We are not unmindful of the right of the Board to draw inferences, Labor Board v. Nevada Copper Co., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305, but the inferences must be reasonable and based upon evidence.

The Board further found, independent of the alleged Section 8(3) violation, that the petitioner also violated Section 8(1) by interrogating employees concerning their union membership and organizational activities and ordered the petitioner to cease and desist therefrom. The trial examiner found no such violation, but the Board reached a different conclusion on the following finding: "Thus, some time during the week following the walk-out, Georgia Patton, one of the strikers, spoke to Production Supervisor Stone in his office at the plant. During that conversation, Stone asked Patton whether she was 'for the union,' and upon Patton's response that she was Stone further questioned Patton as to her reasons therefor. On March 9, 1946, when Lucy Arnold and Dorothy Blanks sought to return to their jobs, Stone asked them why they had signed union cards. On the same day, Stone also asked Dorothy Blanks, 'Why didn't you come to us if you wanted to have a union?' Forelady Lynn admittedly addressed a similar question to Goldie Russell on March 7, as the Trial Examiner found. The foregoing evidence establishes that the (petitioner) interrogated his employees concerning their union membership and activities, and we find that the (petitioner) thereby violated Section 8(1) of the Act."

■ Such perfunctory, innocuous remarks and queries, standing alone as they do in this case, are insufficient to support a finding of a violation of Section 8(1). They come instead within the protection of free speech protected by the First Amendment to the Federal Constitution. The Supreme Court indicated that speech would not be sufficient to sustain a finding of a violation of Section 8(1) in National Labor Relations Board v. Virginia Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348, wherein the court said:

"Whether there are sufficient findings and evidence of interference, restraint, coercion, and domination, without reference to the bulletin and the speeches, or whether the whole course of conduct, evidenced in part by the utterances, was aimed at achieving objectives forbidden by the Act, are questions for the Board to decide upon the evidence.

"Here, we are not sufficiently certain from the findings that the Board based its conclusion with regard to the Independent upon the whole course of conduct revealed by this record. Rather, it appears that the Board rested heavily upon findings with regard to the bulletin and the speeches, the adequacy

of which we regard as doubtful." 314 U.S. at page 479, 62 S.Ct. at page 349.

In that case, the Board had found the open hostility of the company to the union, open support of a company union, threatening statements to employees by high officials, and the use of the spies of a well-known strike breaker union busting organization, in addition to some speeches and a bulletin put out by the employer. However, the Supreme Court could not tell from the record how heavily the Board in its order had relied upon its findings with regard to the bulletin and speeches, the adequacy of which, the Court said, it regarded as doubtful; and the Court remanded the case to the Board for the redetermination of the issues in the light of the opinion.

In the instant case a remand is not indicated because the ground upon which the Board found a violation of Section 8(1) clearly appears. Mere words of interrogation or perfunctory remarks not threatening or intimidating in themselves made by an employer with no anti-union background and not associated as a part of a pattern or course of conduct hostile to unionism or as part of espionage upon employees cannot, standing naked and alone, support a finding of a violation of Section 8(1). In Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430, the Supreme Court said: "Accordingly, decision here has recognized that employers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty. [National] Labor [Relations] Board v. Virginia Electric & Power Co., 314 U.S. 469 [62 S.Ct. 344, 86 L.Ed. 348]. Decisions of other courts have done likewise. [Cases cited.] When to this persuasion other things are added which bring about coercion, or give it that character, the limit of the right has been passed. [Cases cited.] Cf. [National] Labor [Relations] Board v. Virginia Electric & Power Co., supra. But short of

that limit the employer's freedom cannot be impaired." 323 U.S. at pages 537-538, 65 S.Ct. at page 326, 89 L.Ed. 430.

No case has been cited and we know of none holding the view asserted by the Board here. The cases cited by the Board[2] all involved a course of conduct of which the interrogatories as to membership and activity in a union were only a part of the whole picture. In none of them did the mere words of inquiry stand alone.

On the whole record, we agree with the trial examiner that there was no violation of Section 8(1) or Section 8(3). The petition to review and set aside the order of the Board is granted, and the request for enforcement of the order is denied.

---

[2] National Labor Relations Board v. Vail Mfg. Co., 7 Cir., 158 F.2d 664, 665; National Labor Relations Board v. Illinois Tool Works, 7 Cir., 153 F.2d 811, 814; National Labor Relations Board v. Jasper Chair Co., 7 Cir., 138 F.2d 756, 757–758; National Labor Relations Board v. William Davies Co., 7 Cir., 135 F.2d 179, 181; National Labor Relations Board v. Stone, 7 Cir., 125 F.2d 752, 755; National Labor Relations Board v. W. A. Jones Foundry & Machine Co., 7 Cir., 123 F.2d 552, 554.