NATIONAL LABOR RELATIONS BOARD
v. CLARK BROS. CO., Inc.

No. 268, Docket 20375.

Circuit Court of Appeals, Second Circuit.

July 29, 1947.

Gerhard P. Van Arkel, General Counsel, Morris P. Glushien, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Leonard Appel and Mozart G. Ratner, all of Washington, D.C., for petitioner.

Maurice F. Hanning and McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, all of Cleveland, Ohio, and J. Edward Lumbard, Jr., and Donovan, Leisure, Newton, Lumbard & Irvine, all of New York City, for respondent.

Before SWAN, AUGUSTUS N. HAND and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This case is before us on the petition of National Labor Relations Board for enforcement of its order of August 26, 1946, entered against Clark Bros. Company after a hearing before a trial examiner. The order directs the respondent to desist from (a) surveillance of its employees' self-organizational activities, (b) enforcing a rule prohibiting union solicitation on company premises during nonworking time, (c) discrimination in the distribution of union literature at the company's plant, (d) compelling its employees during working time to attend speeches relating to self-organization and (e) interfering with its employees in the exercise of the right to self-organization. Affirmatively the order directs the respondent to rescind Shop Rule 6 in so far as it prohibits union solicitation on company premises during nonworking time, and to mail and post notices to its employees. One member of the Board, Mr. Gerard D. Reilly, dissented from the Board's decision and order. 70 N.L.R.B. 802.

The respondent, a New York corporation, is engaged in the manufacture of gas engines, compressors and related products. It employs at its plant in Olean, N. Y., approximately 1200 persons. For several years preceding 1944, an "independent" union known as Employees Association, Inc., of Clark Bros. Company, hereafter referred to as the Association, had been recognized as the exclusive bargaining representative for the respondent's employees. In the spring of 1944 the United Automobile, Aircraft and Agricultural Implement Workers of America, C.I.O., hereafter referred to as the CIO, began an organizing campaign among the employees. On Janu-

ary 19, 1945 the Board conducted an election at the Olean plant. Neither the Association nor the CIO received a majority of the votes cast, and a run-off election was ordered to be had on February 8th. The respondent, which had been silent before, then began an aggressive campaign to assure the defeat of the CIO in the run-off election; by newspaper advertisements, and by letters and speeches to its employees, it made known its hostility to the CIO. One hour before the election work was stopped and the employees were ordered to listen to respondent's president, who spoke against "outside" unions but assured the workers that they could vote as they pleased without fear of discrimination. The run-off election resulted in a decisive victory for the Association, which received 585 votes as against 394 for the CIO. Upon the latter's protest the election was set aside, and a complaint initiating the case at bar was filed against the respondent. Thereafter, on October 3, 1945, the CIO petitioned for another election, which the Board ordered held, 66 N.L.R.B. 849. In connection with this representation case the CIO executed a written waiver of any right it might have to protest the election on any of the grounds set forth in the complaint in the case at bar. The election was held on April 9, 1946. It resulted in the election of the Association which was thereafter certified as the collective bargaining representative for the employees involved. On May 21, 1946 the respondent moved the Board to dismiss the complaint in the case at bar on the ground that the issues therein had become moot by reason of the representation case. This motion the Board denied.

■ We do not think the issues as to unfair labor practices have become moot because of the representation case and the certification of the Association as collective bargaining agent. The waiver by the CIO precluded it from contending that no fair election could be held in April 1946, but it does not render moot the question whether the conduct of the respondent in connection with the run-off election in February 1945 violated the Act. The CIO will doubtless continue its organizational efforts and may hereafter petition for another election. If the court makes no decision as to respondent's former conduct, it may then be repeated; hence a decision as to its legality will not be a futile exercise of jurisdiction.

■ The charge of surveillance is based on two visits by the respondent's industrial relations director to a saloon frequented by some of the employees for the purpose of overhearing what they were saying about the election to be held on January 19, 1945. What he heard did not result in any action being taken against any employee nor in any interference by the respondent in that election; it does not even appear that any employee knew that his remarks had been overheard. Petty as the incident is, we think we must sustain the finding of surveillance. National Labor Relations Board v. Collins & Aikman Corporation, 4 Cir., 146 F.2d 454, 455. A ruling that an employer was privileged to engage in intentional eavesdropping would be likely to deter free discussion by employees of self-organizational matters.

■ Shop Rule 6, issued in 1943, provided that "No collecting, soliciting, selling, or visiting is permitted unless proper authorization is received." In so far as the Rule prohibits union solicitation on company premises during nonworking hours it is invalid. Republic Aviation Corporation v. National Labor Relations Board, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 557, 157 A.L.R. 1081. The evidence of discrimination in the enforcement of this Rule, though based on a single incident, is sufficient. The Association had been permitted to distribute inside the plant during nonworking hours its official monthly publication "The Union Bulletin." Several weeks after the run-off election, employee Alaimo distributed copies of a CIO leaflet announcing that the election had been set aside. The trial examiner credited his testimony that he did this before 7 a.m., that is, during nonworking hours. Alaimo was told by the respondent that he had violated Shop Rule 6 and warned that a repetition of the violation would result in his suspension.

■ The main controversy concerns paragraph 1(d) of the order which directs the respondent to desist from "(d) Compelling its employees during working time

to listen to speeches relating to self-organization and the selection of a bargaining representative." It is now authoritatively settled that the constitutional guarantee of free speech entitles an employer to express his views on labor policies and to "take sides" on issues involved in employee efforts to organize for collective bargaining, providing his conduct as a whole, including his utterances, is not coercive. National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 477, 62 S.Ct. 344, 86 L.Ed. 348; Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 539, 63 S.Ct. 1214, 87 L.Ed. 1568; National Labor Relations Board v. American Tube Bending Co., 2 Cir., 134 F.2d 993, 146 A.L.R. 1017, certiorari denied 320 U.S. 768, 64 S.Ct. 84, 88 L.Ed. 459. In the case at bar the Board has found that the Company's conduct was coercive, despite the assurances in speeches and statements that the employees could vote as they pleased without fear of retaliation, and has ruled for the first time that compulsory attendance at an anti-union speech on company premises and during working hours is in itself a violation of section 8(1) of the Act, 29 U.S.C.A. § 158(1). The respondent urges that the question of compulsory attendance is settled for this court in the employer's favor by the American Tube case, supra. But that case is not decisive. Although the question may have "lurked in the record," neither the Board nor this court ruled upon it; nor was it argued before us. See Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411. It is, of course, immaterial whether the question was argued on the petition for certiorari which the Supreme Court denied. Therefore no precedent controls decision in the case at bar.

The Board argues that one of the rights guaranteed employees by section 7, 29 U.S.C.A. § 157, is the right to be free to determine whether or not to receive aid, advice and information concerning their self-organization for collective bargaining, and that this right is violated whenever the employer utilizes his power to compel them to assemble and listen to speeches relative to matters of organization. But the present case does not call for laying down so broad a rule. An employer has an interest in presenting his views on labor relations to his employees. We should hesitate to hold that he may not do this on company time and pay, provided a similar opportunity to address them were accorded representatives of the union. Cf. National Labor Relations Board v. Montgomery Ward & Co., 8 Cir., 157 F.2d 486, 498, 499. But in the case at bar the respondent not only engaged in the unfair labor practices already discussed but entered upon an aggressive anti-union campaign which wound up with the president's speech at the compulsory meeting one hour before the voting began. In these circumstances we believe the Board was justified in finding that the respondent's conduct was coercive and an interference with the employees' right to self-organization, despite the generally unexceptionable character of the president's remarks. See National Labor Relations Board v. American Laundry Mach. Co., 2 Cir., 152 F.2d 400.

Enforcement granted.