NATIONAL LABOR RELATIONS BOARD v. SANDY HILL IRON & BRASS WORKS.

No. 15, Docket 20595.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1947.

Gerhard P. Van Arkel, Gen. Counsel, Morris P. Glushien, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Owsley Vose, all of Washington, D. C., Vincent M. Rotolo, of Palisades Park, N. J., and David P. Findling, Associate Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, and Mozart G. Ratner, all of Washington, D. C., for National Labor Relations Board.

Davie, Auerbach, Cornell & Hardy, of New York City, and Walter C. Ross, of Springfield, Mass. (Martin A. Schenck, Christopher W. Hoey and Quentin O. Young, all of New York City, of counsel), for respondent Sandy Hill Iron & Brass Works.

Before L. HAND, SWAN and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The National Labor Relations Board filed this petition under Sec. 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., to enforce an order issued against the respondent on July 11, 1946. The order required the respondent to reinstate a number of discharged employees or to put them on a preferred employment list; to make them whole for back pay less their interim net earnings; to cease and desist from the unfair labor practices found; and to post the usual notices. It was made after a hearing on a complaint issued by the Board, upon two separate charges, one filed by the United Steel Workers of America (C.I.O.) and the other by a discharged employee named Billetdoux. The order was based upon findings which the respondent does not now contend are insufficient in content or inadequately supported by the evidence to sustain the Board's conclusions that the respondent was guilty of unfair labor practices in violation of Sec. 8(1), (3), and (4) of the Act as it stood on the date the order was made. Enforcement of the order, except in so far as it deals with unnamed employees, is resisted only on two grounds stated as follows:

"1. The Board's order may not be enforced under the provisions of the Labor Management Relations Act of 1947 (Public Law 101, 80th Congress, June 23, 1947 [29 U.S.C.A. § 141 et seq.]).

"2. The Board's findings of fact may not be sustained under the provisions of the Administrative Procedure Act of 1946 (Public Law 404, Chapter 324, 79th Congress, 2nd Session June 11, 1946 [5 U.S.C.A. § 1001 et seq.]), and the Labor Management Relations Act of 1947."

The petition for enforcement was filed in this court in May, 1947 and thus before the enactment of the Labor Management Relations Act of 1947, hereinafter to be called the New Act, on June 23, 1947. It did amend the first statute above cited, the Wagner Act, in certain respects but in others left it unaltered. We are now primarily concerned with what changes, if any, were made as to the kind of unfair labor practices this order sought to correct as to the past and prevent as to the future. The aspect of correction will be considered separately from that of prevention.

■ The respondent was found to have violated the Wagner Act by attempting to discourage union organization in several ways, viz., by threats and intimidation, by promises of benefits or reward, and by discriminatory discharges. Anti-union conduct of this nature remains violative of the New Act. If the findings regarding such conduct are now as adequate to support the order as they were when it was made, to the extent that they do, it should be enforced.

■ The reason for enforcement is perfectly plain. Correction of these unfair labor practices is still required. The means and methods of correction are as available as before. It is enough that the findings show the respondent to have violated the applicable statute both as it was when the order was made and as it is now. Since the statute is essentially remedial, rather than punitive, Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126; Republic Steel Corp. v. N. L. R. B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6, it is immaterial that some of the conduct on which the findings of violations of the Wagner Act were based would not be forbidden by the New Act. Thus we need not determine whether the obligations of employers arising out of violations of the Wagner Act are "liabilities" within the meaning of the general savings statute as amended, 1 U.S.C.A. § 29.

■ But the rule is different in respect to the preventive portions of the order. Conduct which was unlawful when the order was made was properly forbidden as of that time. But some of that conduct ceased being unlawful upon the passage of the New Act. To the extent that the preventive portions of the order may be considered to prohibit conduct that is now lawful, they are not enforceable and cannot be made the basis for contempt proceedings. United States v. The Schooner Peggy, 1 Cranch 103, 110, 2 L.Ed. 49; Ziffrin, Inc., v. United States, 318 U.S. 73, 63 S.Ct. 465, 87 L.Ed. 621; N. L. R. B. v. Atkins & Co., 7 Cir., 165 F.2d 659. For instance, statements by representatives of the respondent derogatory to unions, union members, or union organization, but falling short of threats, intimidation, or promises of favor or benefit would not be unlawful if presently made and thus could not now be forbidden. Having made this clear, we do not believe any change in the phraseology of the order is needed.

■ Part of the order requires action in respect to unnamed persons, and is, therefore, presently so indefinite that further action by the Board is necessary. The difficulty is one of identification of the employees who were unlawfully discharged and it arose in this way. After a strike at respondent's plant some 150 employees were discharged. The Board found that the respondent then had a sufficient economic reason, the curtailment of its business, to reduce the number of its employees to the extent it did. The respondent insists that since the discharges were, therefore, for cause Sec. 10(c) of the New Act makes the order invalid as to the reinstatement of any of these employees with back pay. The Board also found and held, however, that the respondent unlawfully discriminated against union members or sympathizers by selecting for discharge a much greater proportion of them than of others, without showing any lawful basis for making the selection, as, for instance, less seniority, ability, skill, or the like. Consequently although the discharges were for cause in the sense that there was a legitimate business reason for making them, they were not for cause in the sense that there was any lawful basis for the selection of the particular employees discharged. That the term "for cause" was used in the statute in both senses, there can be no doubt.

When the question of identifying all of the discharged employees arose, the respondent refused to obey a subpoena to produce its records and the Board was frustrated in its effort to identify them by name. Under these circumstances the order was as definite as it could be. The case comes, we think, well within the power of the Board to frame its order in terms consonant with the needs of actual, and often complicated, conditions and subject to such later modification for purposes of obtaining precision as circumstances require. See Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 198-200, 61 S.Ct. 845, 85 L. Ed. 1271, 133 A.L.R. 1217; International Union of Mine, Mill & Smelter Workers v. Eagle-Picher Mining & Smelting Co., 325 U.S. 335, 341, 65 S.Ct. 1166, 89 L.Ed. 1649. The order contains provisions, which now must be obeyed, requiring the respondent to make available to the Board the information necessary to enable it to amplify the order in this respect. It will then be the Board's duty to make this portion of the order precise and it may then, if necessary, move to make the enforcement order definite and final on this point. N. L. R. B. v. New York Merchandise Co., 2 Cir., 134 F.2d 949, 953.

■ The second ground upon which enforcement is resisted is a bit more nebulous than the first. The argument is that the findings of the Board cannot support the order because there was a failure to observe the standards for decision set up in Sec. 10(c) of the New Act and in Sec. 7(c) of the Administrative Procedure Act. We need not now consider whether these two sections are to be applied only prospectively because merely procedural and whether they are, therefore, presently irrelevant inasmuch as both became effective after this order was made. It is enough that an inspection of the record discloses evidence sufficient to support the Board's findings no matter which of these standards is to be applied.

A typical example of a finding that respondent claims not to be sufficiently supported by the evidence is the one that the respondent violated Sec. 8(3) of the Wagner Act, and, under our holding above of the New Act, in discharging 142 out of 154 employees owing to their union membership and activities or to their participation in a strike called by a local of the United Steelworkers of America. This finding was based upon three circumstances: the fact that about 12 times as many strikers were discharged as non-strikers while the total ratio of strikers to non-strikers was about two to one; the fact that among the Union members who were discharged were several who were of greater seniority and ability than fellow employees who were not discharged, so that the respondent could not validly claim that ability, skill, seniority, or the like rather than Union membership or strike participation was the governing factor in the selection of employees for discharge; and the fact that respondent's personnel director admitted at one time that participation in the strike was one of the considerations in making up the discharge lists. Respondent argues, apparently, that the finding of discrimination from the discharge of a disproportionate number of strikers is a finding based solely upon the "expert" judgment of the Board and thus not based upon substantial evidence under the New Act. See Conference Report, H. R. Rep. No. 510, 80th Cong. 1st Sess. 53, 54. It is a sufficient answer to this to point out that the finding of discrimination, while an inference to be sure, is nevertheless properly drawn from the facts above mentioned which were found on substantial evidence. Indeed, it is difficult to conceive of how the Board could have inferred otherwise in view of the absence of any specific proof to the contrary. But respondent also argues that the testimony of these several discharged employees was uncorroborated and thus not reliable, probative, and substantial. The answers to this are two. In the first place the testimony of each employee was to some extent corroborated, not only by the testimony of the others, but also by that of the personnel director. And in the second, the fact that the evidence was in no other way substantiated is immaterial. Lack of corroboration goes only to the question of credibility.

The petition to enforce the order is granted.