**NATIONAL LABOR RELATIONS BOARD
v. ENGLAND BROS., Inc.**

No. 4694.

United States Court of Appeals
First Circuit.

Feb. 2, 1953.

Samuel M. Singer, Washington, D. C., Atty. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, and A. Norman Somers, Asst. Gen. Counsel, Washington, D. C., on the brief), for petitioner.

Hugh J. Corcoran, Springfield, Mass. (Ely, King, Kingsbury & Lyman, Springfield, Mass., on the brief), for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

The National Labor Relations Board, pursuant to the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., has petitioned this court for enforcement of its order of May 23, 1951, under § 10(c) of the Act, against the respondent England Brothers, Inc.

The respondent is a Massachusetts corporation maintaining its principal office and place of business at Pittsfield, Massachusetts, where it operates a department store. During the course of its business operations the company makes substantial purchases and sales outside of Massachusetts, and the Board's jurisdiction is conceded.

In proceedings instituted by the New England Joint Board, Retail Wholesale and Department Store Union, CIO (herein called the Union), the Board found that the company interfered with, restrained and coerced its employees in violation of § 8(a)(1) of the Act by interrogating them concerning their union activity. The Board thereupon issued the usual order requiring respondent to cease and desist from these practices and to take certain affirmative action.

The issue in this case is whether or not there is substantial evidence to support the findings of the Board on the record considered as a whole. Universal Camera Corp. v. Labor Bd., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

Respondent, in its brief, states that the main issue is whether interrogation of employees concerning their union membership, attendance at union meetings, and

benefits to be gained from a union, per se constitute a violation of § 8(a) (1) of the Act. Respondent contends that in the light of the 1947 amendment of the Act found in § 8(c), 29 U.S.C.A. § 158(c),[1] the interrogation of employees does not, in itself, constitute a violation of the Act. Although we think that interrogation of employees by supervisors does not literally come within the scope of the employer's right under § 8(c), we find it unnecessary to deal with this question. There is not substantial evidence on the record considered as a whole to support the findings of the Board in this case.

In the spring of 1951, the union inaugurated a campaign to unionize the employees at respondent's department store. Upon learning of his employees' union activities, B. N. England, vice president of the company, called a meeting in May, 1951 of all supervisors, who constituted about 35 of respondent's 350 employees, to explain to them the company's attitude toward the union so that "they would have information which they then could give to the employee who approached them." England told the supervisors that although he recognized that the employees had a legal right to join or not to join a union, the company was definitely "opposed to having a union in our store because we felt we would prefer to deal directly with our employees, rather than with them through any outside organization." In his intermediate report on November 14, 1951, the trial examiner found that "there cannot be any unfair labor practice imputed to Respondent, based on any act, speech, or conversation of England, his words and actions were barren of any words of interrogation, or 'threat of reprisal, or force, or promise of benefit'." The Board's Decision and Order of May 23, 1951, contains no finding of an anti-union background and is based solely on alleged acts of respondent in "interrogating its employees concerning their union activity."

The trial examiner based his finding of unfair labor practices on three instances of interrogation by supervisory employees Yeager, Smith, and Bossidy, while affirmatively finding that otherwise their conversations "cannot be entertained as substantial evidence justifying the complaint in this case." The Board disagreed with this last finding and specifically relied on two additional instances, or a total of five conversations, as the basis of its finding.

A sales clerk named Descz testified regarding conversations between a supervisory employee named Smith and herself. She testified that sometime during the month of May 1951, while she and Smith were waiting in her department for change to come back for a customer, Smith said "Perhaps everything will be better when the union gets in" and "I am wondering what the advantages will be." Furthermore, she testified that on two occasions, as she was coming into the store on the morning following the Wednesday night union meeting, she met Smith outside and he asked her if she had attended the meeting. On one of these occasions when the witness, accompanied by her sister, met Smith outside the store, the substance of the conversation regarding the union meeting is reported as follows: "Well, he just more or less elaborated. * * * It was more or less of a wisecrack, if anything. He said, 'Was it a big meeting last night?' I said, 'Yes, it was quite a good meeting'."

Barbara Gaillardet, another employee, testified that an assistant buyer named Miss Bossidy, a minor supervisory employee whose status is contested, "asked me if I signed a card for the union." She also testified relative to a conversation in the office of the respondent's personnel director, Bertha Yeager. According to her own testimony, she went into the office to ask Miss Yeager to give her two nickels for a dime so she could buy a coke. Upon receiving the nickels, the following exchange occurred: "She (Yeager) says, 'I under-

1. § 8(c) provides: "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

stand you are in the union,' and I said, 'Yes'. And that is all there was to it."

Jessie Nagelschmidt, who is employed in the handbags and leather goods department, testified that Miss Bossidy "talked about the union to me * * *. It was either the 9th or 10th of June. It was on a Saturday morning after we had a store meeting. * * * there wasn't anyone right next to us. The girls were around, working * *. Well, she (Miss Bossidy) just asked me what advantages I thought that the union could give us, other than what we are getting now, or what the store would give us, and I said the only thing that I knew of would be more money. And that is what most of the girls want—a one per cent commission."

The last instance of interrogation cited by the Board in support of its finding is a conversation between Raymond Chojnowski, a salesman in the men's clothing department, and Miss Yeager. About the middle of May, Chojnowski was called to Miss Yeager's office. According to the testimony of Miss Yeager, it is her duty as personnel director to keep track of the employees' sales records and the purpose of this interview in May was to talk with Chojnowski about his sales record, which she had previously informed him was capable of improvement. She testified that the interview was as follows: "I sent for him again to talk to him about the sales. I also told him that I thought one reason why his sales were not good enough, and not as high as they should be, was because he spent a great deal of time visiting with people who came in, chatting, when he should be taking care of customers. Mr. Chojnowski very tacitly admitted that by smiling and shrugging, and we both knew that was true.

"I asked him what he felt the union could do for the people that the store couldn't. He said, 'More money.' At that time, I also reminded him that if he could increase his sales, he could earn more money; and that was about the sum total of that conversation." Chojnowski himself testified that "she had asked me what the union could do for me that the Englands could not, and I just stated more money. * * * And then she says, 'Well, wouldn't it have been wiser to seek Company help before seeking outside help?'"

There is some evidence in the record that there were a few other brief discussions of the union between supervisors and employees but no other instance of interrogation is cited by the Board and the record does not indicate that these discussions were in the nature of interrogation. It would be unrealistic to expect that there would be no discussion about the union in a group of employees of this size.

The decision of the Board states, that "We do not agree with the Respondent's contention that these acts of interrogation do not violate the Act because of their allegedly isolated nature. Their very number belies the characterization. The conduct in question involved multiple incidents affecting a number of employees. Nor do we agree that such conduct was 'innocuous', as contended by the Respondent."

In Sax v. National Labor Relations Board, 7 Cir., 1948, 171 F.2d 769, a supervisor asked a former employee who was applying for reinstatement whether she was 'for the union' and upon an affirmative response, he questioned her as to the reasons for her union sympathies. Other former employees who were seeking to return to their jobs also were asked why they had signed union cards. Yet the court held that this evidence was insufficient to support a finding of a violation of § 8(a)(1). The following language of the court, 171 F.2d at page 773, is particularly appropriate to the instant case:

" * * * Mere words of interrogation or perfunctory remarks not threatening or intimidating in themselves made by an employer with no anti-union background and not associated as a part of a pattern or course of conduct hostile to unionism or as part of espionage upon employees cannot, standing naked and alone, support a finding of a violation of Section 8(1). In Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430, the Supreme Court said: 'Accordingly, decision here has recognized that employers' attempts to persuade to action with respect to joining or not joining

unions are within the First Amendment's guaranty. (National) Labor (Relations) Board v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348. Decisions of other courts have done likewise. (Cases cited.) When to this persuasion other things are added which bring * * * coercion, or give it that character, the limit of the right has been passed. (Cases cited.) Cf. (National) Labor (Relations) Board v. Virginia Electric & Power Co., supra. But short of that limit the employer's freedom cannot be impaired.' [Thomas v. Collins] 323 U.S. at pages 537–538, 65 S.Ct. at page 326, 89 L.Ed. 430.

"No case has been cited and we know of none holding the view asserted by the Board here. The cases cited by the Board all involved a course of conduct of which the interrogatories as to membership and activity in a union were only a part of the whole picture. In none of them did the mere words of inquiry stand alone."

We think that this opinion is consonant with our duty to uphold findings of the Board only if they are supported by substantial evidence on the record considered as a whole. In National Labor Relations Bd. v. Montgomery Ward & Co., 2 Cir., 1951, 192 F.2d 160, 163, the court said: " * * * But inquiries made by the manager concerning what was being done in behalf of the union, and statements as to his not liking the union, to the extent that they constituted no threat or intimidation, or promise of favor or benefit in return for resistance to the union, were not unlawful, particularly after the 1947 amendment of the Act found in § 8(c), * * *."

Since there is no finding of an illegal anti-union attitude or background on the part of the respondent and since the trial examiner found that the conduct of vice president England was free from any taint of unfair labor practice, the Board cannot rely on an "aroma of coercion" as evidence upon which to base its finding in this case. Cf. Joy Silk Mills v. National Labor Relations Board, 1950, 87 U.S.App.D.C. 360,

185 F.2d 732, certiorari denied 1951, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350.

The only evidence for the Board's finding is that which we have recited and we do not regard it as substantial.

The petition for enforcement is denied.