NATIONAL LABOR RELATIONS BOARD
v.
ASSOCIATED DRY GOODS CORP. (LORD & TAYLOR DIVISION).
No. 41, Docket 22745.

United States Court of Appeals
Second Circuit.
Argued Nov. 4, 1953.
Decided Jan. 5, 1954.

Clark, Circuit Judge, dissented.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. General Counsel, Arnold Ordman, David J. Vann, Attys., N. L. R. B., Washington, D. C., for petitioner.

Gould & Wilkie, New York City, for respondent; Morrell S. Lockhart, Vincent P. O'Hara, New York City, of counsel.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and BRENNAN, District Judge.

BRENNAN, District Judge.

The National Labor Relations Board seeks the enforcement of its order of March 4, 1953, in accordance with the provisions of the National Labor Relations Act, hereinafter referred to as the Act.

The order is based upon findings which led to the conclusion that respondent had violated Section 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1), in that respondent threatened its employees with loss of benefits in the event that its store became unionized, and by the coercive nature of the interrogation of employee Wiszuk. The factual background will be concisely stated.

From May, 1951, continuing throughout the balance of the year, the United Department Store Workers of America, C. I. O., hereinafter referred to as the Union, were engaged in an effort to organize the employees of respondent, then known as "Lord & Taylor."

In September, 1951, shortly after Labor Day, a Mr. Stohldreier, a service manager of respondent, talked with employee Weiner, as follows:

"Q. Will you give us all the conversation that took place between you and Mr. Stohldreier at that time? A. We got into a discussion about unions, and he stated that he worked in Macy's and that they had a union there and he believed that if we did have a union here the spirit of Lord & Taylor would not be there, and that most likely if we did have a union we might lose some of the benefits we had now in the store.

"Q. Did he specify any benefits you might lose? A. He said they might put in a time clock."

In June, 1951, in the course of the campaign, a leaflet was distributed throughout the store, which bore the signature of a salesman-employee of respondent, named Wiszuk, as one of the employee organizers. In the same month Wiszuk was asked by a Mr. Carroll, a buyer: "He wanted to know my views and why I wanted a union. That was the discussion." The record shows no reply and no further discussion. Buyer Wallace Smith in the same month inquired of Wiszuk in Mr. Smith's office, as follows: "To the best of my recollection, he asked me about union activities, why I was interested in the union, what I would personally gain out of belonging to a union. And I again told him what I believed so far as the benefits of security and what we did not have at that time." The quotation ended the conversation. In August, 1951, Miss Donnelly, Director of the Training Department, conversed with Wiszuk as follows: "She asked me why I wanted a union at Lord & Taylor, why I was for it, and again what benefits I would derive from having a union there, and I explained what I believed in and told her * * *." "I explained that I would have a certain amount of security with a union, where working under the conditions they have I would not have it; also I would gain other benefits that were not given us by the concern." The conversation took

place in Miss Donnelly's office, and she suggested that Wiszuk make an appointment with a vice-president of respondent who would be able to give him additional information so far as benefits that the store gave the employees were concerned. Sometime after Labor Day, 1951, Mr. Hamlet, an assistant operating manager, conversed with Wiszuk as follows: "He asked why I was in favor of a union, what benefits I would gain in having a union at Lord & Taylor." "I gave him my answers why a union would help me and other employees in the store." The conversation took place in Mr. Hamlet's office.

So far as material here, the findings and conclusions of the Board upon which the order was based must find their support in the occurrences outlined above. There is no finding of anti-union hostility to afford support for the findings of the Board. In fact, union organizers were allowed free access to the public areas of the store during the organization campaign. Wiszuk was granted two increases in compensation during the campaign; one, as part of a general wage increase, and the other upon his specific request. The problem here is to evaluate the above occurrences in the light of the provisions of the Act. Section 7 insures to employees the free right of self-organization, while Section 8(c) provides that the expressing of any views, argument or opinion shall not, constitute or be evidence of an unfair labor practice, if such expression contains no threat of reprisal or force or promise of benefit.

The Trial Examiner ruled that Stohldreier's discussion with Weiner did not constitute an unfair labor practice. The Board found otherwise, in that the discussion constituted a threat of loss of benefits to the employees. We find no substantial evidence to support such finding. The conversation appeared to be casual. It was a statement of the speaker's experience, opinion and prophecy, as distinguished from a statement of fact.

As to the interrogation of Wiszuk, both the Trial Examiner and the Board failed to find direct threats, coercion or promises therein. They appear to base their decisions upon the reasoning of Standard-Coosa-Thatcher Co., 85 N.L.R. B. 1358, to the effect that interrogation alone as to union activities or union membership implies coercion. Here was an employee actively engaged in union organization. His status, insofar as the Union is concerned, was public knowledge. No inquiry was made as to the extent of union membership, its organization, its plan of campaign, its meetings or its meeting place. The inquiry was entirely a natural one, and four such inquiries over a period of seven months is insufficient from which to infer a plan or intention to coerce.

It is also to be noted that the conversations involved no argument. Wiszuk's explanations apparently met with no opposition. Unless we are to ignore the provisions of the Act above referred to, which insures to the employer the right of free speech, provided same contains no threat of reprisal or force or promise of benefit, then it seems clear that there is no substantial evidence to support the findings of the Board.

We can find no judicial precedent which goes as far as the petitioner requests in this case. In this Circuit the case of N. L. R. B. v. Montgomery Ward & Co., 192 F.2d 160, holds in effect that an employer may make inquiry of employees during the organization campaign, provided such inquiry and subsequent discussion contains no threat or promises. We adhere to that decision, which is supported by the opinions in Wayside Press, Inc., v. N. L. R. B., 9 Cir., 206 F.2d 862; N. L. R. B. v. England Bros., 1 Cir., 201 F.2d 395; N. L. R. B. v. Arthur Winer, Inc., 7 Cir., 194 F.2d 370, and cases cited therein.

In Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456, the duty of the court in this enforcement proceeding is defined. Following the rules expressed therein it is sufficient to say that the evidence as a

whole lacks the required substance to afford a basis for the order of the Board, and the petition to enforce is denied.

CLARK, Circuit Judge (dissenting).

In N. L. R. B. v. Syracuse Color Press, Inc., 2 Cir., 209 F.2d 596, we have upheld the Board in finding coercion in the pointed cross-examination of five employees as to union organizing activities within the plant. It seems to me the present case, involving persistent questioning along the same line of a single key employee, comes within essentially the same rationale. For my part I do not see a distinction *of law* between "the aroma of coercion" affecting one union member over a period of some months and that affecting several employees substantially all at one time. In either case there would seem to be a sound basis in the evidence from which the Board could and should draw such conclusions as in the light of its experience and responsibility it felt the circumstances to require. I would grant enforcement of the order.