**NATIONAL LABOR RELATIONS BOARD**
**v.**
**SYRACUSE COLOR PRESS, Inc.**
**No. 99, Docket 22813.**

United States Court of Appeals Second Circuit.

Argued Nov. 4, 1953.

Decided Jan. 5, 1954.

Chase, Chief Judge, dissented.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel, John F. Lawless, Attys., N. L. R. B., Washington, D. C., for petitioner; Arnold Ordman, Washington, D. C., of counsel.

Estabrook, Estabrook, Burns & Hancock, Syracuse, N. Y., for respondent; James P. Burns, Jr., Bernadine A. Luttinger, Syracuse, N. Y., of counsel.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and BRENNAN, District Judge.

BRENNAN, District Judge.

Petitioner seeks the enforcement of its order of March 6, 1953, which principally requires that respondent shall cease and desist from interrogating its employees concerning their membership in, or activities on behalf of the International Mailers Union, or any other labor organization. The proceeding is based upon the provisions of Sec. 10(e) of the National Labor Relations Act, 29 U.S. C.A. § 160(e). The Board's decision and order are reported at 103 N. L. R. B. No. 26. No procedural or jurisdictional question is involved. The existence of substantial evidence to support the findings of the Board is the sole problem here.

The Board found that the respondent violated Section 8(a)(1) of the Act, 29 U.S.C.A. § 158(a)(1), in that certain of the respondent's employees were interrogated concerning their union membership, their attendance at union meetings, the location of such meetings, and the outcome of a pending representative election. The factual background will be concisely stated.

The respondent, Syracuse Color Press, Inc., is engaged primarily in the business of printing comic books. Its principal place of business is located at Syracuse, New York, where it maintains two plants; one located on Geddes Street, the other on Charles Street. The latter is sometimes referred in the record as being located at Solvay, New York. It appears that the employees were unorganized, but it is undisputed that the respondent evidenced no hostility generally to organization efforts. In fact, the respondent, with the permission of the Allied Trades Council, affixed a "bug" or label to some of its products, which seemingly indicated union approval.

In the latter part of 1950, the International Mailers Union, hereinafter referred to as Mailers, began an organization campaign among respondent's employees. Similar activities were also commenced by the International Brotherhood of Bookbinders, A. F. L., hereinafter referred to as Bookbinders. Mailers thereafter filed a petition for certification as the bargaining representative of respondent's employees, and the Board directed that an election by production and maintenance employees be conducted on March 31, 1951. Mailers was not a member of the Allied Trades Council,

while Bookbinders was a member, and the question of the possible cancellation of the right to use the label should Mailers win the election arose. This contingency was the subject of general discussions, and the respondent's interest therein is understandable by reason of its possible economic loss.

About a week or two prior to the election date, respondent's superintendent called some five employees into the Charles Street plant office and he, with the general manager, conversed with them. Two foremen were also called into the office, but the conversation with them is not pertinent here. The employees were considered by the superintendent as key men and he presumed that the discussions with them would be reported to the remaining employees of the plant. Three of the employees came to the office singly; the other two came together.

Generally, the first part of the discussions related to the use by the respondent of the label, and an explanation by the superintendent or manager of the possibility of the loss of the use of the label with its consequent economic effect. Both the Trial Examiner and the Board found no violation in such discussions, and the details of same need no repetition here. After discussing the problem of the label with each of said employees they were questioned as to union membership and activities, and such interrogation is the basis for the order sought to be enforced. Employee Anthony was asked if he belonged to the Mailers Union, if he attended any meetings, where the meetings were held, and if he knew of anyone who attended such meetings. Anthony's replies do not appear in detail in the record, except that he said that he was not a member of Mailers, although he was in fact such a member. Employee Yagelski was asked if he attended meetings of the Mailers Union, and was asked if "the fellows" attended the meetings. To each question he replied " * * * a few times." Employees Weirzbicki and Maholick were interviewed at the same time. Weirzbicki was asked if he were a member of the Mailers, and replied in the negative, although he attended its meetings and was active in its behalf. He was asked what the employees talked about (apparently concerning the organization activities of the two unions). The manager asked: "You are among the fellows. Why don't you find out how many members there are and who they are?" The witness replied "O.K." Maholick was also asked if he were a Mailer and there was a discussion as to how many of the employees were members of Mailers. Employee Sarna was advised that he was not called into the office to obtain information as to his membership in any union. He was asked if he had an opinion about the coming election, and he replied that he had not.

The Trial Examiner found no evidence to warrant the conclusion that the interrogation of the employees had any coercive effect upon them, or interfered with their rights; that there was no background of company hostility to organization. He concluded, however, that the interrogation above described was in violation of Section 8(a)(1) of the Act, because of the Board's position to the effect that the questioning of employees concerning their union membership or activities constituted such a violation.

The Board adopted the findings and conclusions of the Trial Examiner with certain modifications. As pertinent here, the Board summarized the interrogations of the five employees above mentioned, and proceeded to discuss the rationale of Standard-Coosa-Thatcher Co., 85 N. L. R. B. 1358, to the effect that interrogation of employees regarding union activities violated Sec. 8(a)(1) of the Act, even in the absence of any unfair labor practice. We do not here pass upon the Board's theory or holding in that case, because the Board evaluated the interrogations in this case as carrying an implied threat of reprisal, and concluded that upon the entire record a violation of Section 8(a)(1) is established. It likewise found that the interrogations improperly inter-

fered with the employees' freedom of choice in the election, which is but another way of stating a violation of 8(a)(1) of the Act. The Board adopted the employees' version of the interrogation, and rejected the respondent's denial thereof. This the Board had the right to do, and the problem then becomes one of evaluating such evidence in the light of existing circumstances. The findings of the Board are not to be lightly disregarded; however, the responsibility for the determination of the existence of substantial evidence to support the findings and order is that of this court. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ Judicial precedents are helpful but not conclusive. Of necessity, interference, restraint or coercion depend upon the facts and circumstances of each individual case, so that the inquiry here is directed to the evidentiary basis for the Board's order in this particular case. If same is found, then the petition must be enforced, even though we do not necessarily use the same method of reasoning as that used by the Board.

■ It is plain that the respondent preferred Bookbinders rather than the Mailers as an employee representative. The reason is probably economic, and no criticism is to be attached to that preference alone. N. L. R. B. v. Clark Bros. Co., 2 Cir., 163 F.2d 373. The interrogations were conducted by highly placed officials of respondent, as distinguished from minor supervisory officials. It was part of a plan of explanation as distinguished from casual inquiry. It took place in the office of authority, as distinguished from the regular place of activities of the employees. Attendance by the employees was compulsory rather than voluntary or optional. It involved inquiries as to union membership of the employee and fellow employees, attendance at union meetings of the employee and other employees and the location of the meeting place. It sought information of union strength and the names of employees who were members. The interrogations involved only the disfavored union, and were conducted with the knowledge and intention that their substance would be communicated to other employees.

■ Did such interrogations interfere, restrain or coerce employees in their right to self-organization? The answer must be found in the record as a whole. We recognize here that the language of the questions propounded is not intimidating in itself. Therefore, if it stands alone, no substantial basis for an unfair labor practice exists. Wayside Press v. N. L. R. B., 9 Cir., 206 F.2d 862; N. L. R. B. v. England Bros., 1 Cir., 201 F.2d 395; N. L. R. B. v. Arthur Winer, Inc., 7 Cir., 194 F.2d 370; N. L. R. B. v. Associated Dry Goods Corp., 2d Cir., 1953, 209 F.2d 593. An examination of these cases show that they differ factually from the instant case. They exemplify the casual, perfunctory, non-hostile interrogation by minor supervisory employees, which bring them within the doctrine of Sax v. N. L. R. B., 7 Cir., 171 F.2d 769.

The type of interrogation here finds no specific authorization in the provisions of Sec. 8(c) of the Act. It is afforded constitutional protection only to the point that it is free from the character of coercion. Thomas v. Collins, 323 U.S. 516 at page 537, 65 S.Ct. 315, 89 L.Ed. 430. When that limit is passed, judicial precedents are unanimous that a violation of Sec. 8(a)(1) may be found.

■ Here the time, the place, the personnel involved, the information sought, and the employer's conceded preference, all must be considered in determining whether or not the actual or likely effect of the interrogations upon the employees constitutes interference, restraint or coercion. This effect is not always easy to discern, but here we have definite proof that the question as to membership propounded by respondent to two employees prompted at least one of them to reply untruthfully. He gave as his reason for the untruth, "I would be put on the spot." He also stated, "I told him no, for the simple reason if I told him

yes, I was afraid I might get the rest of the fellows * * *." Here is actual proof that the interrogation did, in fact, implant a fear that a truthful answer would be a matter of embarrassment either with fellow employees or with the management, or both. The step from embarrassment to restraint or intimidation is a short one.

The request to Weirzbicki to obtain the names of the members of the Mailers Union, with the knowledge that same would be communicated to other employees, must have had a purpose. It carried with it more than the implication of curiosity. All of the circumstances above referred to may go to make up " * * * at least the aroma of coercion" in which the interrogations were conducted. Joy Silk Mills v. N. L. R. B., 87 U.S.App.D.C. 360, 185 F.2d 732 at page 740. At any rate the Board could so find.

█ We conclude that the interrogations referred to here, the surrounding facts and circumstances afford a legal basis for the Board's order, and same is, therefore enforced.

CHASE, Chief Judge (dissenting).

Despite the persuasive quality of the excellent opinion Judge BRENNAN has written for this court, I cannot agree to the basic conclusion that the Board's order is supported by the evidence.

The trial examiner filed an intermediate report in which he said,

"In the opinion of the undersigned there is no evidence to warrant the conclusion that the questioning in this case had any coercive effect upon the employees or substantially interfered with their rights protected under the Act. Nor did the questioning occur in a background of Company hostility to organization or as part of [a] concerted plan to prevent or frustrate unionization of its employees."

That certainly was based on substantial evidence and as I read the Board's decision it agreed but nevertheless arrived at the supposition, contrary to substantial evidence and unsupported by any, that such questioning might engender in the minds of employees a fear of reprisal. We should not allow this flimsy foundation of mere surmise to become adequate support for the order here made. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. There was confusion among the employees as to the significance and importance of the "bug" or union label which the employer was using and as to what effect an election making the Mailers Union their collective bargaining representative would have upon its future use. The employer, with no anti-union motive, questioned some of the key employees and explained the situation to them fairly and honestly in the belief that they would pass the information on to other employees for consideration and to aid them in voting more intelligently on a matter of great importance to them. Far from being likely to intimidate, such conduct on the part of the employer enabled the employees to vote freely as they pleased in the light of pertinent information on which to make up their own minds.

The Board in this instance merely guessed itself ostensibly into position to adhere to the theory advanced in its decision in Standard-Coosa-Thatcher Company, 85 N. L. R. B. 1358, that interrogation of employees concerning their union membership and activities violated Sec. 8(a)(1) of the Act, even in the absence of any unfair labor practices. Its view in this respect is well summarized in the following quotation from page 144 of its Sixteenth Annual Report:

"Consistent with past rulings, the Board has continued to hold that the questioning of employees by their employer *per se* violates Section 8(a)(1) when it concerns the following subjects: Employees' union membership or activities. Their attitude toward the union, or their desire for union representation. Their voting intentions in a scheduled Board election, or their views concerning the outcome of a scheduled Board election * * *."

This theory is, however, in conflict with our decisions in N. L. R. B. v.

Montgomery Ward & Co., 2 Cir., 192 F. 2d 160, 163 and N. L. R. B. v. Sandy Hill Iron & Brass Works, 2 Cir., 165 F. 2d 660, 662, that, since the Taft-Hartley Act became effective, interrogation of employees by an employer and statements by an employer to employees which fall short of present threat or intimidation, or promise of favor or benefit as a reward for resistance to the union are not unlawful.

It is also contrary to Sax v. N. L. R. B., 7 Cir., 171 F.2d 769, 773 where it was well said that, "Mere words of interrogation or perfunctory remarks not threatening or intimidating in themselves made by an employer with no anti-union background and not associated as a part of a pattern or course of conduct hostile to unionism or as part of espionage upon employees cannot, standing naked and alone, support a finding of violation of Section 8(1)." To like effect are N. L. R. B. v. England Bros., 1 Cir., 201 F.2d 395; N. L. R. B. v. Tennessee Coach Co., 6 Cir., 191 F.2d 546; and Wayside Press v. N. L. R. B., 9 Cir., 206 F.2d 862. Consequently, I am unable to agree with my brothers that the order is enforceable and would deny this petition.