**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PROTEIN BLENDERS, Inc., Respondent.**

**No. 14937.**

United States Court of Appeals Eighth Circuit.

Sept. 13, 1954.

**750**

Arnold Ordman, National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Norton J. Come and Robert E. Miller, Attys., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Newton L. Margulies, Des Moines, Iowa (Leo M. Baker, Harvey E. Minkler, Des Moines, Iowa, on the brief), for respondent.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

The National Labor Relations Board has previously declared, in a long line of decisions,[1] and has adhered to that position, in the case that is now before us, that employees are absolutely privileged against any interrogation or any polling by their employer as to their union sentiment or membership.

■ We rejected that unqualified viewpoint, as not being legally tenable, in N. L. R. B. v. Katz Drug Co., 8 Cir., 207 F.2d 168, 171–172, saying that "It cannot therefore be said, as the Board purported to do here, * * * that any inquiry whatever by an employer of an employee as to his or her union membership is 'unlawful per se' * * *."

There are a substantial number of holdings by other courts to the same general effect. See N. L. R. B. v. Kingston, 6 Cir., 172 F.2d 771; N. L. R. B. v. England Bros., 1 Cir., 201 F.2d 395; N. L. R. B. v. Montgomery Ward & Co., 2 Cir., 192 F.2d 160; N. L. R. B. v. Associated Dry Goods Corp., 2 Cir., 209 F.2d 593, 595; N. L. R. B. v. Fuchs Baking Co., 5 Cir., 207 F.2d 737; N. L. R. B. v. Tennessee Coach Co., 6 Cir., 191 F.2d 546; N. L. R. B. v. Algoma Plywood & Veneer Co., 7 Cir., 121 F.2d 602; N. L. R. B. v. Penokee Veneer Co., 7 Cir., 168 F.2d 868, 4 A.L.R.2d 1350; Sax v. N. L. R. B., 7 Cir., 171 F.2d 769; John S. Barnes Corporation v. N. L. R. B., 7 Cir., 190 F.2d 127, 130; N. L. R. B. v. Arthur Winer, Inc., 7 Cir., 194 F.2d 370; Wayside Press v. N. L. R. B., 9 Cir., 206 F.2d 862; Atlas Life Ins. Co. v. N. L. R. B., 10 Cir., 195 F.2d 136.

Thus it would seem that the Board ought acceptingly to have recognized in the present situation that mere interrogation as to union membership or mere polling as to union sentiment cannot abstractly be declared to constitute a violation of § 8(a)(1) of the Labor Management Relations Act, 29 U.S.C.A. § 158(a)(1). Such interrogation or polling necessarily may, however, be found to constitute a violation of the Act, if the setting, the conditions, the methods, the incidents, the purpose, or other probative context of the particular situation can be appraised, in reasonable probability, as having had the effect of restraining or coercing the employees in the exercise of their rights under the Act. We have in a number of cases upheld the Board's finding of violation in situations of interrogation or polling, where improper affective context has been involved in the situation. See, e. g., N. L. R. B. v. United Biscuit Co., 8 Cir., 208 F.2d 52; N. L. R. B. v. Cold Spring Granite Co., 8 Cir., 208 F.2d 163.

■ The case now before us is one, as perviously indicated, where the Board

---

1. As an example of these decisions, see In re Standard-Coosa-Thatcher Company, 85 N.L.R.B. 1358.

has declared a violation of § 8(a)(1) to exist, on the naked basis of a poll having been taken of employees as to their union sentiment. Enforcement is here being sought of the Board's order. The effect of the order is to forbid the employer to take any more polls, of any kind, at any time, in any manner, under any circumstances, for any purpose, to have its employees make indication of their union sentiment.

The employer is Protein Blenders, Inc., of Iowa City, Iowa. It had no history of anti-union animosity. The Board exonerated it from all the other charges of unfair labor practices which had been made against it. The Board further expressly held that the poll itself had been unaccompanied by any actual threats or promises of benefits and that it was without any implied threats of economic reprisal.

The employer had had a previous policy of asking its employees' views, by secret poll, on various matters of plant affairs. As to the poll here involved, it had explained to the employees that the purpose was merely to assist it in gauging its future production costs, and that the poll was in no way an official one upon the question of a plant union. The employees were advised that they were free to stay or leave, and to vote or not vote, as they saw fit.

They were told that, while the employer's sentiments were against a union, they had the right to express a preference for a union, or to join one, if they so desired, and that there would be no consequence of any nature to any of them for so doing. The ballot given them contained only the bare words "Yes" and "No", and they were asked simply to encircle, with a pencil mark, the one which was expressive of their sentiment. The ballots were distributed by employees selected at random. Each employee marked his ballot in complete privacy. There was no attempted surveillance of what the employees either generally or specifically did. The ballots were removed from the ballot box and counted by employees selected at random.

All of these facts were in substance found by both the Trial Examiner and the Board.[2] The Trial Examiner concluded that the taking of the poll had not been in the situation an unfair labor practice. His Intermediate Report took the position that "The Board's long line of decision that interrogation of employees with respect to union affairs is per se a violation of Section 8(a)(1) of the Act * * * is no longer tenable." The Board refused to accede to this view and adhered to its previous position that any such interrogation or polling is abstractly and per se unlawful.

Enforcement of the Board's order is denied.[3]

2. The Board saw fit to make its own independent findings, conclusions and order, because of its disagreement with the results reached by the Trial Examiner in his Intermediate Report.

3. It appears from a synopsis of In re Blue

Flash Express, Inc., 109 N.L.R.B. No. 85, appearing in 23 L.W. 2076, currently received, that the Board has just made declaration that "We hereby repudiate the notion that interrogation per se is unlawful * * *." We have had access only to the synopsis of the U. S. Law Week.