**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**A. E. NETTLETON CO., Nettleton Shops, Inc., Empire State Nettleton Company, Inc., Nettleton Roosevelt Company, Inc., and Manhattan Nettleton Company, Inc., Respondents.**

No. 113, Docket 24181.

United States Court of Appeals Second Circuit.

Argued Dec. 11, 1956.

Decided Jan. 21, 1957.

Theophil C. Kammholz, General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Owsley Vose and Rosanna A. Blake, Washington, D. C., for petitioner.

Bond, Schoeneck & King, Syracuse, N. Y., Tracy H. Ferguson, Syracuse, N. Y., of counsel, for respondents.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

SWAN, Circuit Judge.

The Board's Decision and Order is reported in 108 N.L.R.B. 1670. It finds that the respondents have violated section 8(a) (1) and (5) of the Labor Management Relations Act, 29 U.S.C.A. § 158 (a) (1) and (5), and directs them to cease and desist therefrom and, affirmatively, to bargain, upon request, with Retail Shoe Employees Union, Local 1268, CIO, and to make whole the striking employees for any loss sustained by refusal to reinstate them. The respondents contend that the record does not support the Board's findings, and that procedural errors require a dismissal, remand or modification of the order.

The order is addressed to the five respondents, each of which is a corporation. For brevity they will be severally referred to as Company, Shops, Empire State, Roosevelt and Manhattan. The three last named maintain in New York City retail shoe stores for the sale of "Nettleton" shoes produced at Company's factory in Syracuse, N. Y. These three store corporations, as well as others in various states, are wholly owned subsidiaries of Shops, which is a wholly owned subsidiary of Company and has its offices in Company's building in Syracuse. Shops clears the orders of the stores, keeps their records, pays their bills, supplies them with cash to pay wages, and has power to transfer an employee from one store to another store. All five respondents have the same principal corporate officers, who also serve as directors, and Mr. Cook, the president, has the final decision on matters involved in collective bargaining. The workers at the three New York stores are the employees on whose behalf the Union demanded collective bargaining. By virtue of the "corporate pyramid," briefly described above and more fully described in the Trial Examiner's Intermediate Report, he concluded that the five corporations "may be considered as a single employer for the purposes of the Act." The Board accepted this conclusion.

■■ The respondents contend that the Board erred in the inclusion of Company and Shops as the "employer." Their brief asserts, page 7, that the record viewed as a whole "does not conclusively establish that the Company and the Shops corporation share the status of 'single employer' with the other Respondents." Whether the record "*conclusively*" establishes a finding of fact by the Board is not for this court to determine. Our function is to determine whether there is "substantial evidence" on consideration of the whole record to support the Board's finding.[1] As to Shops we think the record overwhelmingly supports it.[2] As to Company we think the evidence with respect to its interrelations with the other respondents was such as to make applicable this court's decision in National Labor Relations Board v. National Shoes, 2 Cir., 208 F.2d 688, and cases therein cited at page 691.[3]

■ The respondents' second contention concerns alleged procedural defects. Charges of unfair labor practices were filed by the Union and served upon Shops and the three store corporations on Jan-

1. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456.

2. It is noteworthy that when the workers at the New York stores sought an increase of wages they wrote to Mr. Buell, business manager of Shops, not to the managers of the stores.

3. See also A. M. Andrews Co. of Oregon v. National Labor Rel. Bd., 9 Cir., 236 F.2d 44.

uary 8, 1953. No charges were made against Company, and it was not named as a party to the proceeding, until April 22, 1953. It is the position of the respondents that those portions of the complaint based upon alleged unfair labor practices occurring prior to October 22, 1952, six months prior to the service of the amended charge, should have been dismissed as to Company.[4] The Board by a three to two majority adopted the Trial Examiner's finding that the respondents had independently violated section 8(a) (1), 29 U.S.C.A. § 158(a) (1), by three incidents: (1) Buell's asking Winch, in the latter part of August 1952, whether he had joined the Union, and remarking that Winch had made a mistake in doing so; (2) Radazzo's asking Florentine, in September 1952, who had started the Union movement; and (3) Buell's urging Schneyman, on January 5, 1953, to resign from the Union and return to work. We think that the record as a whole discloses substantial evidence to support the finding that these three interrogatory incidents were not merely casual, nonhostile inquiries but carried a coercive implication.[5] Assuming *arguendo* that the Board lacked jurisdiction, as we understand the respondents to contend, to make findings that the two earlier incidents were unfair labor practices on the part of Company, we fail to see any practical advantage to any of the respondents from the sustaining of this contention. Paragraph 1(a) of the

Board's order directs the five respondents to cease and desist from:

"(a) Interrogating its employees with regard to their membership, or nonmembership, in Retail Shoe Employees Union, Local 1628, CIO, or in any other labor organizations, in a manner constituting interference, restraint or coercion, in violation of Section 8 (a) (1) of the Act; * * *".

A holding that Company could not be found to have violated section 8(a) (1) by interrogating the employees in August and September 1952, would still leave the finding of its violation by the third incident. The respondents take the position that Schneyman was a supervisor, and consequently Buell's remarks to him in January 1953 could not be a violation of section 8(a) (1). The term "supervisor" is defined in section 2(11).[6] The manager of Roosevelt was Radazzo and, when he was absent from the store, Schneyman, who had worked there 25 years and received a somewhat higher wage than the other employees, performed some of Radazzo's duties. But Schneyman himself testified that he never made any recommendations with respect to the hiring or discharge of any employees, and it appears that what he did in Radazzo's absence did not require the use of independent judgment in connection with exercise of authority described in the statutory definition. We agree with the majority of the Board that he was not a supervisor.

**4.** This position is rested on the Proviso in section 10(b) of the Act, 29 U.S.C.A. § 160(b): "Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. * * *"

**5.** See N. L. R. B. v. Syracuse Color Press, 2 Cir., 209 F.2d 596, 600, certiorari denied 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed.

1108; Joy Silk Mills v. N. L. R. B., 87 U.S.App.D.C. 360, 185 F.2d 732, 740, certiorari denied 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350.

**6.** 29 U.S.C.A. § 152(11) defines a supervisor as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

Consequently even on the assumption that the first two incidents could not be considered by the Board as against Company, the third incident could be and would make appropriate Company's inclusion in paragraph 1(a) of the order.

■ However, in our opinion the first two incidents may also be considered as against Company. Service of the charges on Shops might well be considered adequate service on Company since the five respondents constitute a single employer, but we will assume *arguendo* that it was not.[7] However that may be, we interpret the Proviso in section 10(b) of the Act as creating a statute of limitations rather than a jurisdictional limitation, such as appears in section 9(h), 29 U.S.C.A. § 159(h).[8] The respondents frankly concede that the effect of the section 10(b) Proviso upon the complaint and the Trial Examiner's findings was not raised below.[9] They contend, however, that because in their answer to the complaint they expressly reserved the right to contest at all times the jurisdiction of the Board with respect to matters set forth in the complaint, there was no waiver of the objection now urged before the court. The contention is not persuasive. As already stated, in our opinion the Proviso does not impose a jurisdictional limitation upon the Board, but is a statute of limitations. That a statute of limitations may be waived is elementary. No extraordinary circumstances to excuse its waiver appear in the record. We cannot sustain the contention that procedural defects require a dismissal, remand, or modification of the Board's order.

■ The last and most significant finding of the Board is the failure of the respondents to bargain in good faith. The store employees joined the Union on August 13, 1952 because they had received no replies to their letters to Mr. Buell of Shops asking increased wages. On August 19th the Union wrote Mr. Buell requesting a meeting to discuss a collective bargaining agreement. On September 16th the Union filed a representative petition for an election. Thereafter Mr. Bond, as attorney for the respondents, satisfied himself that the Union represented the store workers, and the first bargaining meeting was scheduled for, and held on, October 15, 1952. Three other meetings were held November 7th, November 20th, and December 9th.[10] It would serve no useful purpose to recount the conversations at the earlier meetings. As stated in National Labor Relations Board v. American Nat. Ins. Co., 343 U.S. 395, 402, 72 S.Ct. 824, 828, 96 L.Ed. 1025, " * * * the duty to bargain requires more than a willingness to enter upon a sterile discussion of union-management differences." At the December 9th meeting the Union representatives complained that negotiations had been going on for a long time without progress, particularly as to wages. Mr. Bond replied that he could not help it, as Mr. Cook had as yet not authorized him to make any offers. The Union again offered to meet with Mr. Cook in Syracuse and Mr. Bond said he would see if such a meeting could be arranged. The meeting ended with an understanding that the parties would meet again, but no date was fixed for the meeting. On December 23, Mr. Bond and Mr. Garfinkel agreed to have another meeting

7. Cf. N. L. R. B. v. McGahey, 5 Cir., 233 F.2d 406, 408–409.

8. See in accord N. L. R. B. v. Itasca Cotton Mfg. Co., 5 Cir., 179 F.2d 504.

9. Section 10(e), 29 U.S.C.A. § 160(e), contains the provision:
"No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

10. On December 2, 1952 the Regional Director approved the Union's request to withdraw without prejudice its representation petition for an election.

on December 29, 1952. But on December 26th Mr. Bond telephoned Mr. Garfinkel that Mr. Radazzo had been taken to the hospital for an emergency operation and no meeting could be had until he was able to attend. Mr. Garfinkel protested there was no need for such delay as Mr. Cook was the only one with authority to do anything. He mentioned that offers of increased wages had been made to the men to get them out of the Union, and said "If the offers had been made to the Union, we probably would have had a contract." He also warned that the men were likely to strike if negotiations were not brought to a conclusion. The offers of increased wages were made by the store managers, who said they emanated from Mr. Cook, to Schneyman, Florentine, Tedrow, Winch and Swanberg. They were conditioned on dropping union membership and were rejected because the employees wanted the security of the Union. On January 2, 1953 the employees voted to strike and commenced picketing on January 6. The strike was still continuing at the time of the hearing.

The Trial Examiner found that Mr. Radazzo had had a minor role in the bargaining conferences and that his illness was seized upon as an excuse to delay future meetings; that in offering individual employees wage increases provided they gave up their union membership, the respondents acted in derogation of their duty to bargain with the Union;[11] that the employer representatives lacked adequate authority to conduct the negotiations as evidenced by the fact that all matters had to be referred to Mr. Cook for approval, with the result that the conferences resulted in nothing more than an exchange of thoughts; and that the respondents entered into the negotiations without any intention of reaching an accord with the Union. Accordingly he concluded that the respondents had not bargained in good faith and thereby had violated section 8(a) (5) and (1). He also found that the strike was caused and prolonged by the unfair labor practices. We think the record contains substantial evidence to support the findings. Accordingly the petition for enforcement is granted.

11. In N. L. R. B. v. National Shoes, 2 Cir., 208 F.2d 688, we held that actually raising wages evidenced a failure to bargain in good faith. An offer to raise wages on condition of withdrawal from the Union presents no significant difference in considering the absence of good faith bargaining. See also May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 383, 385, 66 S.Ct. 203, 90 L.Ed. 145.